Chief Judge Desmond.
 

 These consolidated proceedings were brought to review the denial by the Assessors of Taxes of the Town of Lansing, Tompkins County, of exemption from realty taxes for the years 1954, 1955 and 1956 of relator’s 800-acre farm in the township. Delator claims the exemption under subdivision 6 of section 4 of the Tax Law (now Deal Property Tax Law, § 420), the pertinent part of which makes exempt
 
 *354
 
 from tax “ The real property of a corporation or association organized exclusively for * * * religious, bible, tract * * * purposes * * * and used exclusively for carrying out thereupon one or more of such purposes ”. The courts below rejected relator’s demands for exemption and dismissed the proceedings.
 

 Relator, organized some 50 years ago as a membership corporation for general religious purposes such as the spreading of bible truths, missionary work and instruction of men and women in religion, is the governing body in the United States of the sect or religious group known as Jehovah’s Witnesses which has a membership in this country of some 180,000 persons. Its headquarters buildings in Brooklyn contain housing and boarding accommodations for teachers, students and clergymen as well as a printing plant from which millions of pieces of religious literature are sent throughout the world. The Tompkins County farm, the taxation of which is the subject matter of this proceeding, is far across the State from the Brooklyn establishment but it is undisputed that during the years here in question nearly all the farm produce was used for feeding the employees at the Brooklyn buildings and at a bible school conducted by relator in Tompkins County not on but near the lands here directly involved. Exhibits I, J and K show that in these three years the approximate percentages of produce thus used were respectively 92, 96 and 95. Despite this, the Referee held that the sales of these small food surpluses were separate activity and not merely “incidental” to the farm’s primary purpose of feeding the students, teachers, workers and members of the religious body.
 

 The Appellate Division, in affirming the denial of exemption, did not make a direct finding as to whether the farm sales were incidental only but it did find (it is really undisputed) that nearly all the food produced was used as relator claims, and that only a small remainder was sold. We do not see how disposal of surpluses of this comparatively small size could in reason be held to be more than incidental and insubstantial. The finding to the contrary is not only opposed to the facts but it is inconsistent with the results reached in
 
 People ex rel. Society of N,
 
 Y.
 
 Hosp.
 
 v.
 
 Purdy
 
 (58 Hun 386, affd. 126 N. Y. 679)
 
 *355
 
 and
 
 Matter of New York Conference Assn. of Seventh-Day Adventists
 
 v.
 
 Schenck
 
 (275 App. Div. 742, affd. 304 N. Y. 706).
 

 The Referee, as another reason for dismissal, had held that the farm “is not operated for educational and religious purposes, and is not a necessary adjunct for the religious functions of the petitioner or for carrying out the purposes of its incorporation. ’ ’ He thought the real test as to that was ' ' whether the operation of the farm is a part of the educational and religious program ”, and he found that it was not such a part. No justification appears for this part of the Referee’s holding and the Appellate Division apparently did not concur in it. The Referee seemed to base this particular conclusion on the failure of relator to prove that the members of this sect living and working at the farm and at the Brooklyn buildings are “ ministers of religion ” as that term is usually understood. What he apparently had in mind was the proof that these people do their evangelization and colportage after hours or on week ends, that they do not have the kind or extent of training usually provided for clergymen, that they make a small profit from the sale of books and other literature produced by relator, that some of them receive a small monthly allowance as well as board, lodging and clothing, and that relator itself derives from its printing and publishing activities a large profit which goes into its surplus and reserves. But none of those facts deprive the relator of the exemptions and benefits available to religious bodies. In
 
 Murdock
 
 v.
 
 Pennsylvania
 
 (319 U. S. 105, 111) the United States Supreme Court held as to this very sect that the mere fact that the religious literature is ‘ sold ’ by itinerant preachers rather than donated ’ does not transform evangelism into a commercial enterprise.” The Supreme Court reminded us in the
 
 Murdock
 
 opinion that “ a religious organization needs funds to remain a going concern.” We all know that religious and educational corporations publish and sell all sorts of literature in aid of the causes which the corporations serve. It is a new and inadmissible idea that an organization not organized for profit but for religious or educational purposes loses its status as such because out of the sale of books and pamphlets it makes a first profit which goes into its capital funds or because the distributors of the books make a tiny gain therefrom.
 

 
 *356
 
 The Appellate Division in its
 
 Per Curiam
 
 opinion found a new reason for taxing this farm. Belying entirely on the word “ thereupon ” in subdivision 6 of section 4, the Appellate Division said that ‘ ‘ Although the printing operation in Brooklyn may be considered an exempt purpose ” the land used to produce the food to support the workers in that exempt purpose was not exempt from local real estate tax because of the fact that the land was so far removed from the Brooklyn buildings. The court recognized that there are many New York cases
 
 (People ex rel. Blackburn
 
 v.
 
 Barton,
 
 63 App. Div. 581;
 
 People ex rel. Missionary Sisters
 
 v.
 
 Reilly,
 
 85 App. Div. 71, affd. 178 N. Y. 609, and
 
 People ex rel. Seminary of Our Lady of Angels
 
 v.
 
 Barber,
 
 42 Hun 27, affd. 106 N. Y. 669)
 
 “
 
 involving religious and educational organizations in which an exemption was given for land used to grow food for students, teachers, members and employees of the organizations ’ ’. It reasoned, however, that it would be too great an extension of this statutory language to include farm lands remote from the building in which the primary educational or religious work was done. We see no ground for this distinction and it does not appear in any of the other New York decisions or in the statute itself. The well-known
 
 “ Doctors Hospital
 
 ” case
 
 (People ex rel. Doctors Hosp.
 
 v.
 
 Sexton,
 
 267 App. Div. 736, affd; 295 N. Y. 553) emphatically denied any right of assessors to add requirements not found in the exemption law itself. Beliance on the word “ thereupon ” in subdivision 6 of section 4 is misplaced. The statute directs that exemption be allowed for all lands of a religious corporation used exclusively for carrying out a religious or similar purpose “ thereupon ”. Since in fact and according to all the New York cases prior to this one the growing of food for personnel is such a purpose, exemption for the food-growing area is mandated and in assessing it the town officers acted in excess of their jurisdiction.
 

 Perhaps the best known of the New York cases on this subject of exempting farm lands used in connection with educational and religious activities is
 
 People ex rel. Seminary of Our Lady of Angels
 
 v.
 
 Barber
 
 (42 Hun 26 [1886], affd. by this court without opinion 106 N. Y. 669,
 
 supra).
 
 The General Term opinion in the
 
 Seminary
 
 case cited a number of earlier decisions exempting from real property taxation lands owned by educational
 
 *357
 
 groups but used for the production of food for teachers and students — even in instances where the students who used the food were paying tuition and other fees to the institutions. The tax statute of that day was similar to the modern one since it exempted buildings erected for the use of colleges and other institutions of learning and used for such purposes ‘ ‘ and the several lots whereupon such buildings so used are situated”. In the
 
 Seminary
 
 litigation the taxing authorities argued to the court as a supposed bar to exemption that the farm lands were separated from the educational buildings by railroad tracks. The court refused to accept so strict a construction and, holding (42 Hun,
 
 supra,
 
 p. 30) that the statute was “ entitled to such a construction as will permit it to serve the-purposes in view ’ ’, ruled that in order to be entitled to exemption the land need only be devoted to no use other than that which is necessary or fairly incident to the uses and purposes of the institution. The only possible differences between the
 
 Seminary
 
 case and the present one are that the farm land in the cited case was nearer to the educational buildings than in our case, and that all the farm crops in the
 
 Seminary
 
 case were used by the faculty, students and employees of the seminary. Such immaterial differences cannot justify restrictive application of a public policy statute like this one. As the General Term said in the
 
 Seminary
 
 case (42 Hun 26, 30): “ The policy of the law has been, in this State from an early day, to encourage, foster and protect corporate institutions of religious and literary character, because the religious, moral and intellectual culture afforded by them were deemed, as they are in fact, beneficial to the public, necessary to the advancement of civilization, and the promotion of the welfare of society. And, therefore, those institutions have been relieved from the burden of taxation by statutory exemption.” The same idea was restated a few years ago by the First Department in
 
 Williams Institutional Colored M. E. Church
 
 v.
 
 City of New Yorh
 
 (275 App. Div. 311, 313): the basis for tax exemption in New York is the performance of “ services which by the settled public policy of the State * * * are of such importance as to require or justify [tax] exemption”. That policy has been carried down into decisions of our own day. In
 
 Matter of Pace Coll.
 
 v.
 
 Boyland
 
 (4 N Y 2d 528, 532) we said, citing the
 
 Seminary
 
 case with approval: “ Furnishing of meals
 
 *358
 
 to students, faculty and staff on college premises is recognized as entering into their use for educational purposes, nor does it customarily disturb full tax exemption
 

 While an exemption statute is to be construed strictly against those arguing for nontaxability
 
 (People ex rel. Mizpah Lodge
 
 v.
 
 Burke,
 
 228 N. Y. 245), the interpretation should not be so narrow and literal as to defeat its settled purpose, which in this instance is that of encouraging, fostering and protecting religious and educational institutions. Such high and traditional purposes should not require for their attainment that religious schools plow their surplus crops back into the ground or move their farms alongside their halls of learning or their halls of learning into farming areas.
 

 Many more cases could be cited to show a uniform trend and approach in these matters. One of them
 
 (Temple Grove Seminary
 
 v.
 
 Cramer,
 
 98 N. Y. 121) reminds us of simpler days of yore in its holding that the renting out of school buildings as a summer boarding place did not destroy exemption rights. In the Clarkson College litigation
 
 (People ex rel. Clarkson Mem. Coll.
 
 v.
 
 Haggett,
 
 274 App. Div. 732, affd. 300 N. Y. 595) we held that this same subdivision 6 of section 4 of the Tax Law as matter of law exempted from taxation buildings purchased by Clarkson College not located on the college campus proper and rented by the college to faculty members as well as to students. It was our view that such use was incident to the primary educational purpose of the institution. The decisions below in the present case cannot be squared with this long line of New York precedents or with the settled policy which they express. The courts below have held that tax exemption is to be refused here because strictly educational activities were not conducted on the farm property, but the same was true to greater or less degree in the
 
 Seminary
 
 case, the
 
 Clarkson
 
 case, and others. Nothing should turn on the fact that a small part (5% to 10%) of the farm produce was here sold as surplus (a larger proportion of the harvest was sold in
 
 Matter of New York Conference Assn. of Seventh-Day Adventists
 
 v.
 
 Nutt,
 
 279 App. Div. 845, affd. 304 N. Y. 706). Historically and in reason, the only test is whether the farm operation is reasonably incident to the major purpose of its owner. There can be no doubt about that here.
 

 
 *359
 
 In another of the old cases
 
 (Hebreu, Free School Assn.
 
 v.
 
 Mayor of City of New York,
 
 4 Hun 446, 450) the General Term said of a similar tax exemption statute that it should be read so as to cover any society “ whose organization and object should be of the benevolent, charitable or missionary character, falling within the general sense of the term ‘ religious ’ as contradistinguished from private and secular institutions.” That will serve as an answer to the argument made or suggested here that the somewhat rudimentary training of these Witnesses and the unorthodox character of their religious beliefs and practices remove them from the beneficent aim and coverage of this statute.
 

 The order should be reversed and the prayer of the petitions granted, with costs.
 

 Judges Dye, Fuld, Froessel and Burke concur with Chief Judge Desmond; Judges Van Voorhis and Foster dissent and vote to affirm.
 

 Order reversed, with costs, and matter remitted to Special Term for further proceedings in accordance with the opinion herein.