In the Matter of ROCHESTER CHRISTIAN CHURCH, INC., et al., Respondents, v STATE OF NEW YORK PUBLIC SERVICE COMMISSION, Appellant, and ROCHESTER GAS & ELECTRIC CORPORATION, Respondent.

Third Department, June 18, 1981

### APPEARANCES OF COUNSEL

*Peter H. Schiff (Charles R. Gibson* of counsel), for appellant.

*Johnson, Reif & Mullan, P. C. (Samuel G. Brundage* of counsel), for Rochester Christian Church, Inc., and others, respondents.

### OPINION OF THE COURT

MIKOLL, J.

Petitioners are duly organized and existing churches formed under the Religious Corporations Law. Rochester Gas & Electric Corporation supplies gas and electric services to petitioners.

In 1979, respondent Rochester Gas & Electric informed petitioners and certain other religious corporations that their electric service rate classifications were to be changed from a residential rate to the higher general rate classification. The residential rate is applicable to electric services utilized by a religious corporation "exclusively in connection with * * * religious purposes", pursuant to the classification system and section 76 of the Public Service Law.

Petitioners sought relief from the higher charges through the Public Service Commission (PSC). The PSC found that the parochial schools operated by petitioners used electricity for purposes not exclusively religious, and that, therefore, section 76 of the Public Service Law did not prohibit Rochester Gas & Electric from charging petitioners the general rate.

In July, 1980, petitioners commenced the instant proceeding pursuant to CPLR article 78 seeking an annulment of the PSC's determination. Special Term (105 Misc 2d 679) annulled the determination of the PSC as requested by petitioners and found that the use of electricity for exclusively religious purposes includes its use for the teaching of secular as well as religious studies within a religious structure, and, therefore, that section 76 of the Public Service Law mandates a residential utility rate be charged for such use. This appeal by respondent Public Service Commission ensued. Respondent Rochester Gas & Electric did not participate actively in the article 78 proceeding and has not joined in this appeal.

The judgment should be reversed, the determination of the Public Service Commission confirmed and the petition dismissed. The parochial schools maintained by petitioners should be excluded from the phrase "religious purposes" as used in section 76 of the Public Service Law.

That section provides: "Rates charged religious bodies. No gas corporation, electric corporation or municipality shall, directly or indirectly, charge, demand, collect or receive from any corporation or association organized and conducted in good faith for religious purposes, a rate for gas or electric service utilized exclusively in connection with such religious purposes greater than the rates or charges charged, demanded, collected or received by such gas corpo-

ration, electrical corporation or municipality from domestic consumers within the same village, town or municipality."

There is a paucity of case law dealing directly with the construction of the quoted section.[1] Respondent relies heavily on an unreported decision *(Staten Is. Bd. of Jewish Educ. v Brooklyn Union Gas Co.* [Municipal Ct of City of NY, Borough of Richmond, July 27, 1961, affd Supreme Ct, App Term, 2d Dept, Oct. 30, 1961]). There, the plaintiff owned and operated a small school in which 80 children were taught various Jewish sacred studies and secular studies. The secular subjects were designed to meet the mandatory requirements of the New York State Education Law. The plaintiff operated no other facilities aside from this school. There was evidence that the Jewish religion requires that Jewish children be taught both religious and secular subjects in a manner designed to inculcate Jewish beliefs. The plaintiff, therefore, claimed that its teaching of secular subjects constituted a religious purpose within the meaning of section 76 of the Public Service Law. The Municipal Court rejected this contention.[2]

---

1. See *Matter of Long Is. Light. Co. v Public Serv. Comm. of State of N. Y.* (105 Misc 2d 874, affd 80 AD2d 977). The section is interpreted in dicta by the trial court but the question of what constitutes an exclusive religious purpose is not specifically addressed in the appellate decision.

2. The court stated:

"To hold that the interpretation of civil statutes must conform to the doctrinal religious beliefs of a specific religious sect, 'would be to make the professed doctrines of religious belief superior to the law of the land, and in effect to permit every citizen to become a law unto himself. Government could exist only in name under such circumstances' (Reynolds v. United States, 98 U.S. 145, 166-7).

"If it had been the intent of the Legislature that the statute apply to educational as well as religious purposes it could have specifically so stated. There was precedent for its so doing. The exemption provisions of the Tax Law (secs. 4(6); 221; and 249-b (3)), which were enacted many years prior to the enactment of sec. 76 of the Public Service Law in 1934, designate religious purposes in juxtaposition to other designated purposes, including, specifically, educational purposes.

"It is thus apparent that within the legislative intent, religious purposes are given a connotation distinct from that of educational purposes. To read into section 76 of the Public Service Law the phrase 'educational purposes' would violate a basic rule of statutory interpretation. ' "It is a universal principle in the interpretation of statutes that *expressio unius est exclusio alterius"* (1 McKinney's Statutes, Consol. Laws, 1942, [§] 240), namely, the specific mention of one person or thing implies the exclusion of other persons or things; where a statute expressly described the particular act, thing or person to which it shall

While there are differences between the facts of the afore-mentioned case and the matter under consideration, the similarities are most significant. Petitioners herein have established their respective parochial schools in order to teach their members' children religion and secular subjects in a manner designed to instill in the children the respective Christian values and beliefs the churches hold. The secular subjects, while taught with religious undercurrents and overtones, are obviously designed to meet the State Education Law's compulsory education requirements (Education Law, art 65), thereby distinguishing petitioners' schools from "Sunday schools" or purely religious schools.

Petitioners argue that "exclusively", when similarly used in other statutes, has been interpreted to mean "primarily" or "dominantly", ignoring incidental uses (see *People ex rel. Watchtower Bible & Tract Soc. v Haring*, 8 NY2d 350; *Matter of Multi Million Miles Corp. v State Liq. Auth.*, 55 AD2d 866, affd 43 NY2d 774; *Gospel Volunteers v Village of Speculator*, 33 AD2d 407, affd 29 NY2d 622; *Greater N.Y. Corp. of Seventh-Day Adventists v Town of Dover*, 29 AD2d 861, app dsmd 23 NY2d 682). Such a judicial interpretation, however, does not mean that the phrase "exclusively * * * [for] religious purposes" as used in section 76 cannot be properly interpreted to exclude parochial schools. The petitioners' parochial schools are obviously designed to accomplish two objectives: fulfill their belief in a religiously oriented secular education and fulfill the compulsory education requirements of the State of New York, thereby turning out an individual able to function in our secular society. The former may be more important to the petitioners than the latter, but that does not mean that it is the primary purpose, much less the exclusive purpose, for operating the schools. The latter purpose is certainly not incidental to the former. The purposes are more accurately described as coequal uses of electricity.

---

apply, it is a general, if not altogether irresistible, inference that what is omitted or not included was intended to be omitted and excluded * * *' (Dezsofi v. Jacoby, 178 Misc. 851, 854; cf. Doyle v. Gordon, 158 N.Y.S.2d 248, 257). The Legislature having omitted to include, and thereby having intended to exclude, educational organizations as beneficiaries of preferred rates for gas services, this court may not enlarge upon the legislative design" *(Staten Is. Bd. of Jewish Educ. v Brooklyn Union Gas Co., supra, pp 4-5).*

Our decision in this case is consistent with the long-standing interpretation of section 76 utilized by the Public Service Commission and the utility companies. Cases cited by petitioners interpreting the Real Property Tax Law, the Alcoholic Beverage Control Law and zoning ordinances are inapposite. The wording of those laws and the objectives of such legislation differ materially from the language and purposes of section 76 of the Public Service Law.

We have also considered the constitutional objections raised by petitioners to the application of a general service rate to their school operations and find such arguments to be without merit.

The judgment should be reversed, on the law, the determination of the Public Service Commission confirmed, and the petition dismissed, without costs.

KANE, J. P., MAIN, CASEY and YESAWICH, JR., JJ., concur.

Judgment reversed, on the law, determination of the Public Service Commission confirmed, and petition dismissed, without costs.