55 N.Y.2d 196 (1982)
In the Matter of Rochester Christian Church, Inc., et al., Appellants,
v.
State of New York Public Service Commission et al., Respondents.
Court of Appeals of the State of New York.
Argued January 12, 1982.
Decided February 23, 1982.
David C. Gibbs, Jr., and Charles E. Craze, of the Ohio Bar, admitted on motion pro hac vice, and Samuel G. Brundage for appellants.
Charles R. Gibson and David E. Blabey for State of New York Public Service Commission, respondent.
Chief Judge COOKE and Judges JASEN, GABRIELLI, JONES, FUCHSBERG and MEYER concur.
*199 WACHTLER, J.
The question on this appeal is whether the utility rate applicable to "domestic consumers" and religious institutions utilizing the service "exclusively in connection with such religious purposes" (Public Service Law, § 76) applies to gas and electricity consumed by parochial schools where both secular and religious subjects are taught. The Public Service Commission has determined that such schools are not operated "exclusively" for religious purposes within the meaning of the statute. In an article 78 proceeding brought by several churches which maintain parochial schools, the Supreme Court annulled the determination but the Appellate Division reversed and reinstated it. The churches now appeal to this court.
The petitioners are churches organized under the Religious Corporation Law. In addition to providing facilities for religious services each of the petitioners also operates a school where students in elementary through high school grades receive instruction in the tenets of their faith as well as the secular subjects prescribed by law. The issue *200 before us is presented in the context of schools located on church property, either adjacent to the church or part of the same building, and in which the classrooms are used for both secular and religious instruction. Utility service for these institutions is provided by Rochester Gas and Electric Corporation.
Prior to 1979 the utility treated the "combined church and school operation" as a single entity which was billed for utility services at the "domestic rate". By statute this rate, which is lower than the general rate, is applicable to residential consumers and "any corporation or association organized and conducted in good faith for religious purposes" when the service is "utilized exclusively in connection with such religious purposes" (Public Service Law, § 76). In 1979, however, the utility company informed petitioners that "a school where secular subjects are taught is an operation which is not exclusively for religious purposes, and a general service rate must be applied". The more favorable domestic rate would still be applied to utility services furnished to "the church and its related facilities", as opposed to the school, provided each was separately wired so that they could be billed at different rates. Petitioners were further informed that if this was not done all utility services consumed by the "combined operation" would be billed at the higher general rate.
The petitioners filed a complaint with the Public Service Commission urging that the utility service consumed by the schools was utilized exclusively for religious purposes because each of the schools "is directly affiliated with the respective church and * * * is an integral part of the religious observance of each church." They explained that the "so called secular subjects, when taught by a church school are taught with a religious connection and are a part of the observation by the church of its religious tenets. These tenets require that all subject matter must be religiously connected and must be taught to the children in the church school as mandated by the Bible * * * all subjects are taught from a religious point of view and with a religious inflection. Thus, when the buildings are used to teach the children, the religious practices of the churches are being accomplished." They also relied on court decisions *201 in which the terms "exclusively religious" and similar language employed in other statutes had been interpreted broadly to mean "primarily religious". They further contended that the utility's interpretation of the statute would violate the free exercise clause of the First Amendment.[*]
The commission held that section 76 of the Public Service Law did not apply to educational institutions. It was noted that in older statutes dealing with tax exemptions (former Tax Law, § 4, subd 6; [now Real Property Tax Law, § 421, subd 1, par (a)]; Tax Law, §§ 221, 249-c, subd [3]) the Legislature had expressly provided that the benefits of the law would extend to organizations serving religious and educational purposes. Since the Legislature made no similar references to educational institutions when it subsequently enacted section 76 of the Public Service Law in 1934 the commission found an implied legislative intent to exclude such institutions. In reaching this conclusion the commission relied upon, and specifically adopted the reasoning of an unreported lower court decision which is apparently the only known case to address the issue (Staten Is. Bd. of Jewish Educ. v Brooklyn Union Gas Co., Municipal Ct of City of NY, Borough of Richmond, July 27, 1961, affd Supreme Ct, App Term, 2d dept, Oct. 30, 1961). The cases cited by the petitioners in which the courts had given an expansive meaning to religious purposes and uses in statutes, such as the tax exemption law, were rejected on the ground that "none are directly applicable to the present issue, nor do they involve our statute."
The petitioners then commenced this article 78 proceeding to have the commission's determination annulled. The Supreme Court granted the relief on the ground that providing formal education is "[f]oremost among * * * [the] varied legitimate purposes" of a church and "it would be an unwarranted and unreasonable straining of the statutory language to arbitrarily draw a line between parochial and secular studies taught within the religious structure."
*202 The Appellate Division reversed and reinstated the commission's determination. Like the commission the Appellate Division found inapplicable those cases construing the term "`exclusively' when similarly used in other statutes" to mean "primarily" (81 AD2d, p 207). Nevertheless the court concluded that by providing secular and religious education in furtherance of "two coequal objectives" petitioners' schools could not be described as either exclusively or even primarily religious.
Although our prior cases defining the legitimate scope of religious uses and purposes were not specifically addressed to section 76 of the Public Service Law they are not as irrelevant as the commission and the Appellate Division assume. The effect of this statute is to give religious institutions the benefit of a utility rate more favorable than the general rate. In this regard it is but one of many statutes which place religious institutions in special protective categories with respect to various activities such as paying taxes (Real Property Tax Law, § 421, subd 1, par [a]), zoning (see, e.g., Matter of Diocese of Rochester v Planning Bd. of Town of Brighton, 1 N.Y.2d 508) and the use of alcohol in the community (Alcoholic Beverage Control Law, § 64, subd 7). Of course the statutes are not identically worded in all particulars, but it is significant that in defining the organization or activity to be benefited the Legislature consistently requires that it be "exclusively" religious, as it has in the statute now before us. The most striking parallel is found in the real property tax exemption statute (Real Property Tax Law, § 421, subd 1, par [a]) which in terms nearly identical to section 76 applies to property owned by a "corporation or association organized or conducted exclusively for religious * * * purposes" and "used exclusively for * * * such purposes". When the Legislature has employed similar terms in statutes having a common purpose it is reasonable to assume that it intended a uniform meaning when, as here, there is no indication of a contrary intent (see, e.g., Matthews v Matthews, 240 N.Y. 28, 35).
Religious services are, of course, "exclusively religious", but the term embraces more than that. Religious activities are not confined to a church or house of worship. Traditionally *203 churches and religious organizations engage in a wide variety of activities which may be seen to be "exclusively religious" when they are reasonably incidental to the religious goal (People ex rel. Watchtower Bible & Tract Soc. v Haring, 8 N.Y.2d 350; cf. Matter of St. Luke's Hosp. v Boyland, 12 N.Y.2d 135, 143). Thus a farm operated by a religious organization to feed its members has been held to be exempt from taxes although farming is not necessarily a religious activity (People ex rel. Watchtower Bible & Tract Soc. v Haring, supra). An exemption has also been held to be applicable to a summer camp maintained for the members of a particular congregation (Greater N. Y. Corp. of Seventh-Day Adventists v Town of Dover, 29 AD2d 861, app dsmd 23 N.Y.2d 682). A school operated by a church to educate its children in a religious context is even more intimately related to religious objectives (cf. Matter of Diocese of Rochester v Planning Bd. of Town of Brighton, 1 N.Y.2d 508, supra). That is particularly true when, as in the cases now before us, it is a tenet of the faith.
The fact that part of the curriculum includes secular subjects does not mean that the facilities are being partly devoted to nonreligious purposes. Nonreligious use of religious facilities typically involves loan or rental of the property, or the sale of its products, to third parties to be used for purposes unrelated to religious objectives (see, e.g., Matter of Multi Million Miles Corp. v State Liq. Auth., 43 N.Y.2d 774; Matter of Trustees of Calvary Presbyt. Church v State Liq. Auth., 270 N.Y. 497; People ex rel. Watchtower Bible & Tract Soc. v Haring, 8 N.Y.2d 350, supra). Here the teaching of secular subjects by a religious school is an integral part of the church's belief that knowledge of the world should be conveyed and considered in a religious context. If feeding church members can be considered a completely religious activity, educating its children would seem to fall into the same category. Assuming, however, that teaching the secular subjects is not a religious pursuit, it nevertheless would not deprive the institution of its essentially religious character.
Partial or part-time use of a religious facility for nonreligious purposes does not make it any less religious unless, of course, the secular use is the predominant one (Matter of Trustees of Calvary Presbyt. Church v State Liq. Auth., *204
supra; Matter of Multi Million Miles Corp. v State Liq. Auth., supra). The test, as expressed in our more recent opinions, is whether the property is primarily or principally used for religious purposes (Matter of Association of Bar of City of N. Y. v Lewisohn, 34 N.Y.2d 143, 153; Matter of American Bible Soc. v Lewisohn, 40 N.Y.2d 78, 83; Matter of Swedenborg Foundation v Lewisohn, 40 N.Y.2d 87, 93). Thus a church farm which sells a small portion of its food as surplus, does not lose its essentially religious character or its tax exemption (People ex rel. Watchtower Bible & Tract Soc. v Haring, 8 N.Y.2d 350, supra). Nor does the occasional and noncommercial use of a portion of a church by a nonreligious individual or group detract from its primary or paramount function as a religious institution (Matter of Trustees of Calvary Presbyt. Church v State Liq. Auth., supra; Matter of Multi Million Miles Corp. v State Liq. Auth., 43 N.Y.2d 774, supra; cf. Matter of Community Synagogue v Bates, 1 N.Y.2d 445).
In this case the record shows that the teaching of religious beliefs is the paramount objective and that it pervades all subjects whether secular or religious. Indeed the courts have long recognized that this is generally, if not universally, true of parochial schools (see, e.g., Lemon v Kurtzman, 403 US 602, 617; Tilton v Richardson, 403 US 672, 685; Meek v Pittenger, 421 US 349, 370) at least at the elementary and high school levels (cf. Roemer v Maryland Public Works Bd., 426 US 736) and that the primary reason they were established and maintained by religious organizations is for "the propagation of a religious faith" (NLRB v Catholic Bishop of Chicago, 440 US 490, 503, quoting DOUGLAS, J., concurring in Lemon v Kurtzman, supra, p 628). Thus we conclude that the petitioners' parochial schools are primarily or "exclusively religious" within the meaning of section 76 of the Public Service Law and that they are entitled to the domestic rate for the utilities they consume.
Accordingly, the order of the Appellate Division should be reversed, with costs, and the judgment of the Supreme Court, Albany County, should be reinstated.
Order reversed, etc.
NOTES
[*] No issue has been raised as to whether the statute extending the more favorable domestic rate to religious organizations violates the establishment clause of the First Amendment nor do we reach that issue in this case.