OPINION OF THE COURT
Vito C. Caruso, J.
This is a proceeding pursuant to RPTL article 7 to review *770 the 1996 assessment of petitioner’s property — a hospital and parking garage — located at 1101 Nott Street in the City of Schenectady. Presently before the court is a motion by petitioner for summary judgment. Respondents oppose and cross-move for summary judgment.
The underlying facts are undisputed. Petitioner is a domestic corporation organized under the Not-For-Profit Corporation Law for the purpose of owning and operating a voluntary nonprofit hospital. The hospital building is and always has been wholly exempt from taxation (RPTL 420-a). In 1977, petitioner constructed a 720-space parking garage adjacent to the hospital for the use of patients, visitors and employees. From 1977 until 1996, the parking garage was also wholly exempt.
In 1996, respondent Assessor of the City of Schenectady (the Assessor) determined that petitioner was not using the parking garage exclusively for nonexempt purposes because it was leasing up to 220 parking spaces on the ground floor to an adjacent medical office building for the exclusive use of its owners, employees and patrons. The medical office building, which consists of 17 office condominiums, is owned by Columbia-Nott Street Group (Columbia) and is constructed on land which was leased to Columbia from petitioner. When the building was constructed, the City of Schenectady’s zoning law apparently required that the building have 217 off-street parking spaces and this requirement was satisfied by Columbia’s lease of up to 220 spaces in petitioner’s underutilized parking garage. Petitioner maintains exclusive control over the operation and maintenance of the parking garage, including the leased spaces, and charges a rental fee of $12 per space per month. Petitioner asserts and respondents do not dispute that the lease is not a profit-making arrangement, i.e., the cost of maintaining the garage far exceeds the income petitioner derives from the lease. It is unclear from this record, however, whether the leased spaces are in fact cordoned off from the rest of the parking garage with a completely separate entrance or exit or they could not be used by hospital, patients, visitors or staff, either during or after the office building’s regular office hours.
The Assessor assessed what he determined to be the nonexempt portion of the parking garage at $1,244,910, a figure evidently arrived at by multiplying the garage’s total value ($5,600,000) by the percentage of the garage the Assessor determined was actually used for medical office parking *771 (22.32%). Petitioner disputed the assessment, arguing that the leasing of parking spaces is a mere incidental use which does not destroy the RPTL 420-a (1) (a) exemption, or alternatively, . that if the medical office parking is deemed taxable, the parking attributed to those office condominiums which petitioner itself leases should be exempted, thereby reducing the over-all assessment accordingly. Petitioner’s administrative complaint was denied and this proceeding ensued.
RPTL 420-a (1) (a) provides that real property “owned by a corporation or association organized or conducted exclusively for * * * hospital * * * purposes * * * and used exclusively for carrying out thereupon * * * such purposes * * * shall be exempt from taxation.” This section has been interpreted as requiring a taxpayer seeking the exemption to satisfy a three-part test: (1) the taxpayer must be organized exclusively for the purposes identified in the statute; (2) its property must be “used exclusively” for such purposes; and (3) no pecuniary profit may inure to the benefit of any of its officers, members or employees, nor may it simply be used as a guise for profit-making operations (Matter of Shrine of Our Lady of Martyrs v Board of Assessors, 40 AD2d 75, 76 [3d Dept 1972], affd 33 NY2d 713). Here, respondents do not dispute that petitioner satisfies the first prong of the test. Nor do they dispute petitioner’s claims that it does not derive any profit from its lease of the parking spaces. Rather, the focus is on the second element — the used exclusively requirement.
As the Court of Appeals noted, “[t]he term ‘exclusively’, in this context, has been broadly defined to connote ‘principal’ or ‘primary’ such that purposes and uses merely ‘auxiliary or incidental to the main and exempt purpose and use will not defeat the exemption’ ” (Matter of Yeshivath Shearith Hapletah v Assessor of Town of Fallsburg, 79 NY2d 244, 249, quoting Matter of Association of Bar v Lewishon, 34 NY2d 143, 153). Hence, the test of entitlement to a tax exemption under the “used exclusively” clause is whether the use is reasonably incidental to the primary or major purpose of the facility (supra, at 250).
In support of their position that the leased parking spaces are not reasonably incident to petitioner’s purpose, respondents rely heavily upon Matter of Genesee Hosp. v Wagner (47 AD2d 37 [4th Dept 1975], affd on opn below 39 NY2d 863). There, the petitioning hospital built a Doctor’s Office Building contiguous to its hospital and rented out parts of it to physician staff members who carried on their own private practices there. The *772 assessor determined that the building was taxable. In arguing that the office building was reasonably incident to its purpose and thus tax exempt, the hospital emphasized, as petitioner does here, that the building’s proximity to the hospital served to attract well-known and high-quality medical personnel thereby enhancing patient care and improving the hospital’s teaching quality. The Court was unpersuaded, noting: “The private practice of medicine by a hospital’s attending physicians is primarily a commercial enterprise only incidentally related to the hospital’s function of providing health care to the community. The concept and development of a professional office building adjoining a hospital facility is an admirable addition to the community and doubtless will improve the teaching and health functions of the hospital. However, it is also a facility which is in direct competition with privately developed professional buildings in an area which serves the identical function as far as the private practice of medicine is concerned. As it presently exists, the Doctors Office Building, insofar as the attending physicians are concerned, is primarily the place where they earn their living with the additional convenience of proximity to the hospital” (47 AD2d, at 46). In essence, respondents assert that the reasoning employed by the Genesee Hosp. Court in holding that the hospital’s lease of office space to physicians defeated the exemption is equally applicable to petitioner’s lease of a portion of its parking garage to service private professional office space.
The court is unpersuaded. Without a doubt, Matter of Genesee Hosp. v Wagner (supra) stands for the proposition that a hospital’s lease of office space to private practice physicians is not something, that is reasonably incidental to hospital purposes. Here, however, petitioner is not leasing office space. It simply owns and operates a parking garage, something it has done since at least 1977 and something which, it bears emphasizing, was expressly held to be reasonably incident to petitioner’s hospital purposes and thus, wholly exempt from taxation (see, Matter of Ellis Hosp. v Fredette, 27 AD2d 390 [3d Dept 1967], lv denied 20 NY2d 642; see generally, Matter of Pace Coll. v Boyland, 4 NY2d 528). Given this, the within case is more factually akin to People ex rel. Watchtower Bible & Tract Socy. v Haring (8 NY2d 350) than it is to Matter of Genesee Hosp. v Wagner (supra). In People ex rel. Watchtower (supra), the petitioner, a religious organization, owned an 800-acre farm in Tompkins County and used much of the food produced on the farm to feed employees at its Brooklyn head *773 quarters and at a nearby bible school. The farm generated some surplus produce, estimated to be approximately 4 to 8% of the total, and was sold to the public at a small profit. The Court of Appeals held that the farm was reasonably incidental to the petitioner’s religious purposes and that the generation of an incidental profit from the sale of surplus produce did not defeat the exemption. The following excerpt from the opinion is particularly instructive:
“While an exemption in the statute is to be construed strictly against those arguing for nontaxability * * * the interpretation should not be so narrow and literal as to defeat its settled purpose, which in this instance is that of encouraging, fostering and protecting religious and educational institutions. Such high and traditional purposes should not require for their attainment that religious schools plow their surplus crops back into the ground or move their farms alongside their halls of learning or their halls of learning into farming areas.
“Many more cases could be cited to show a uniform trend and approach in these matters. One of them (Temple Grove Seminary v. Cramer, 98 N Y 121) reminds us of simpler days of yore in its holding that the renting out of school buildings as a summer boarding place did not destroy exemption rights * * * Nothing should turn on the fact that a small part (5% to 10%) of the farm produce was here sold as surplus (a larger proportion of the harvest was sold in Matter of New York Conference Assn. of Seventh-Day Adventists v. Nutt, 279 App. Div. 845, affd. 304 N Y 706). Historically and in reason, the only test is whether the farm operation is reasonably incident to the major purpose of its owner. There can be no doubt about that here.” (Supra, at 358.)
Under the foregoing reasoning, it simply cannot be said that petitioner’s accommodation of the medical office building by allowing it access to an underutilized portion of its parking garage transforms what has otherwise been held to be a reasonably incidental use into a commercial enterprise sufficient to defeat the exemption in whole or in part (cf., Matter of Rochester Christian Church v State of N. Y. Pub. Serv. Comm., 55 NY2d 196, 203-204).
Accordingly, for the foregoing reasons, it is ordered that petitioner’s motion is granted, without costs, insofar as it pertains to tax year 1996, which is the only year legal action challenging the assessment was instituted; and it is further ordered that respondents’ cross motion is denied, without costs.