Matter of First United Methodist Church in Flushing v Assessor, Town of Callicoon (2025 NY Slip Op 06526)

Matter of First United Methodist Church in Flushing v Assessor, Town of Callicoon

2025 NY Slip Op 06526

Decided on November 24, 2025

Court of Appeals

Wilson, Ch. J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on November 24, 2025

No. 69 

[*1]In the Matter of First United Methodist Church in Flushing, Respondent,
v
Assessor, Town of Callicoon et al., Appellants, et al., Respondents. (And Another Proceeding.)

Daniel G. Vincelette, for appellants.
Michael D. Altman, for respondent First United Methodist Church in Flushing.

WILSON, Chief Judge:

These proceedings under the Real Property Tax Law present a factual dispute about how a church based in Flushing, Queens, actually used a property it purchased in the Town of Callicoon. Because the lower courts committed no legal error, and because we may not reweigh facts or redetermine issues of credibility, we affirm.
I.
The First United Methodist Church in Flushing (the Church) is a nonprofit religious organization based in Queens with approximately 1000 members. In 2018, it purchased a 73-acre parcel of land in the rural zoning district of the Town of Callicoon, Sullivan County (Town).
In 2021, the Church applied for a religious use tax exemption for the parcel for the 2021 tax year (see RPTL 420-a [1] [a]). The Town Assessor denied the tax exemption; the record does not contain the denial letter. After the Town assessed property tax for the 2021 tax year, the Church filed a timely grievance complaint, which the Town's Board of Assessment Review denied. The Church commenced an RPTL article 7 proceeding in Supreme Court challenging the denial of its exemption application.
While the 2021 petition was pending, the Church filed a complaint with the Town Board of Assessment Review challenging the taxable status of the property for the 2022 tax year. The Board denied the Church's 2022 complaint, and the Church commenced another RPTL article 7 proceeding in Supreme Court challenging the denial of the 2022 complaint, which was joined with the proceeding challenging the 2021 assessment.
After Supreme Court denied the Town's motion for summary judgment on the 2021 petition and motion to dismiss the 2022 petition, the case proceeded to a nonjury trial. The Church presented testimony from its Chairperson, Shung Kim, and the Town presented testimony from the Town Assessor as well as the Town Supervisor, whose residence and farm is adjacent to the Church's property.
Mr. Kim testified that although the Church bought the property with the intention of using it as a "retreat center," it ended up primarily using the property to farm vegetables for distribution to low-income Queens residents. Mr. Kim acknowledged that church volunteers would travel to the property primarily to help with the harvesting and transporting of produce to Queens, and that there were rare overnight stays on the property, one of eight people and one of ten, where those visitors engaged in "bible study, singing hymns, [and] sharing information." No testimony elicited any definition of the term "retreat" beyond any colloquial understanding of the word.
The Town Assessor testified that she denied the Church's 2021 tax exemption application based on the content of the application, not based on knowledge of the activities occurring on the property. On cross-examination, when asked if she had evidence that the property was actually regularly used other than as a farm, she testified that, other than the exemption application and despite making an in-person visit to the property, the only evidence she could recall regarding activity of the property was a short list of prayer services that she stated was written in Chinese.[FN1]
The Town Supervisor testified that he lives and farms a property across the street from the subject property, and that for the past fifty years his family has farmed hay on 25 acres of the Church's 73-acre parcel without a formal agreement and without compensating the Church, or its predecessors, for his family's use of the property. He confirmed that the Church was growing vegetables on a portion of its land, which he believed was smaller than what the Church claimed it was farming, but did not testify to observing any overnight "retreats" on the property.
After post-trial briefing, Supreme Court found that the Church's use did not violate the zoning law, concluded the property was exempt, and granted the petitions. In its decision and order, Supreme Court noted that despite disputed issues of fact pertaining to the amount of acreage the Church farmed, it found all witnesses credible, including Mr. Kim, and it credited Mr. Kim's testimony as to both the Church's abandonment of its intended use for which it purchased the property as well as its ultimate actual use. The Appellate Division affirmed, with one Justice dissenting (230 AD3d 885 [3d Dept 2024]). That Court granted leave to appeal to this Court.[FN2]
II.
First, the parties dispute the legal burdens that govern these RPTL article 7 proceedings. It is well settled that whereas the burden of establishing entitlement to a real property tax exemption lies with the party seeking the exemption (see e.g. Matter of Maetreum of Cybele, Magna Mater, Inc. v McCoy, 24 NY3d 1023, 1024-1025 [2014]; New York Botanical Garden v Assessors of Town of Washington, 55 NY2d 328, 334 [1982]), the burden of establishing a zoning code violation to defeat an exemption lies with the municipality asserting it (see e.g. Matter of Eternal Flame of Hope Ministries, Inc. v King, 16 NY3d 778, 779 [2011]). Here, the Appellate Division correctly applied those well-settled burdens to affirm Supreme Court's grant of the Church's 2021 and 2022 petitions (230 AD3d at 888-891).
Because the lower courts applied the correct legal framework, the only other question within the scope of our review is whether there is record support for the finding that the Town failed to prove a zoning code violation (see Adirondack Mtn. Reserve v Board of Assessors of Town of N. Hudson, 64 NY2d 727, 728 [1984]). "In a case such as this, with affirmed findings of fact, our scope of review is narrow. This Court is without power to review findings of fact if such findings are supported by evidence in the record" (Congel v Malfitano, 31 NY3d 272, 293-294 [2018] [*2][internal quotation marks omitted]). When considering whether property has been "used exclusively" for carrying out religious or other qualifying purposes, making it exempt from taxation under RPTL § 420-a (1) (a), "[i]t is the actual or physical use of the property that the Real Property Tax Law is concerned with" (Matter of Lackawanna Community Dev. Corp. v Krakowski, 12 NY3d 578, 581 [2009]).[FN3]
Our role is not to substitute our judgment for that of the hearing court but rather to determine whether there is record support for the decision it reached. Here, the trial record supports Supreme Court's finding, affirmed by the Appellate Division, that although petitioner may have purchased the property with the intention of using it as a "retreat,"[FN4] its actual use of the property was to clear approximately one acre of the parcel and, on that cleared area, grow vegetables for charitable distribution to low-income Queens residents. The only other trial evidence about actual use of the property was that the Town Supervisor, who lived across the street from the subject property, regularly harvested hay from the property and never saw any overnight use of the property for "retreat" purposes.[FN5]
The legal issue here is the Church's challenge to the Town's denial of a tax exemption for the 2021 tax year and, separately, a denial of an exemption for the 2022 tax year. It was the Town's burden to demonstrate a zoning violation in each tax year sufficient to defeat the tax exemptions the Church had demonstrated it was entitled to. Both lower courts correctly held that the Town failed to carry that burden. Although its briefing is not the model of clarity, the Town appears to have mounted several alternative legal challenges to the Church's use of the property. Its briefing before Supreme Court includes: (1) an argument that the Church was operating a "Church or Synagogue" on the property in violation of the zoning code, (2) an argument that the Church was operating a "retreat center" as an "accessory use" to a "Church or Synagogue" in violation of the zoning code, and (3) only in its brief in support of its motion for summary judgment, the bare assertion that the Church was running a "retreat center" as a "Summer or day camp use" on the property in violation of the zoning code. Supreme Court squarely rejected the first two arguments in its post-trial decision and order ("While occasional retreats may have been held at which people engaged in organized prayer, this does not constitute regular organized religious services as required under the code to constitute a church. Nor does the petitioners' use of the property qualify as an accessory use to a church"), and the Town abandoned the third argument by offering no further facts or legal analysis at trial or in its post-trial briefing demonstrating the Church was running a disallowed "summer or day camp."[FN6] In addition to failing to adduce evidence at trial of whether the "retreats" took place in the relevant tax years despite Supreme Court's instruction that "each tax year is a separate year, and there's an independent determination as to whether an exemption is warranted," the Town also failed to elicit testimony concerning what the Church's definition of "retreat" was, or whether use of [*3]the property as such an undefined "retreat" falls within the zoning code's definition of a conditional "Summer or day camp" use of the property.
Our dissenting colleagues arrive at their conclusion by impermissibly substituting their own view of the evidence for the factual determinations made by Supreme Court and affirmed by the Appellate Division. Notably, much of the evidence they rely on—including statements in the Church's tax exemption applications, as well as a sign posted on the property—is indicative of the Church's intent in purchasing the property, not its actual use. That evidence was before Supreme Court, which, after the benefit of observing witnesses throughout a bench trial, credited Mr. Kim's testimony about the property's actual use for farming purposes over the Town's evidence about the Church's intended use of the property as a "retreat center." As to the dissent's reliance on a youth group meeting that took place on the property in 2021 (dissenting op at 4), Mr. Kim's complete testimony supports the conclusion that the youth came to farm the property, stayed overnight, and studied the bible and prayed while there to assist with harvesting; Supreme Court was not obligated to view the facts as the dissent would read them. The governing standard of review does not allow us to now reweigh these facts; we may only study the record for support for Supreme Court's decision.
As a result, there is simply no basis to disturb Supreme Court's findings, affirmed by the Appellate Division, that the Town failed to discharge its burden to prove a zoning violation sufficient to defeat a tax exemption for either of the tax years in question (see People ex rel. Watchtower Bible & Tract Soc., Inc. v Haring, 8 NY2d 350, 358 [1960] ["While an exemption statute is to be construed strictly against those arguing for nontaxability, the interpretation should not be so narrow and literal as to defeat its settled purpose, which in this instance is that of encouraging, fostering and protecting religious and educational institutions"]).
Accordingly, the order of the Appellate Division should be affirmed, with costs.

RIVERA, J. (dissenting):

The Assessor and the Board of Assessment Review of the Town of Callicoon (together, "the Town") appeal, by leave of the Appellate Division, from an order, following a bench trial, granting two Real Property Tax Law article 7 petitions in favor of the First United Methodist Church in Flushing ("the Church"). In those petitions, the Church asserted that it was entitled to a real property tax exemption under RPTL 420-a for the 2021 and 2022 tax years on the ground that it exclusively used the property at issue to carry out religious purposes. I would hold that there is no record support for Supreme Court's decision to grant the Church's petitions, because the uncontroverted trial evidence established that, during the relevant tax years, the Church held religious gatherings on the property in violation of the Town's zoning code. Those zoning code violations constituted a complete defense against the Church's claim of entitlement to the tax exemptions.
RPTL 420-a (1) (a) provides, in relevant part, that "[r]eal property owned by a corporation . . . organized or conducted exclusively for religious [or] charitable . . . purposes" and which is "used exclusively for carrying out thereupon one or more of such purposes," is "exempt from taxation." Evidence that a landowner used their property [*4]in violation of an applicable zoning code is a complete defense against their claim of entitlement to a tax exemption (see Matter of Oxford Group-Moral Re-Armament, MRA, Inc. v Allen, 309 NY 744, 746 [1955]).
According to the evidence adduced at a combined bench trial on the RPTL article 7 petitions, the Town Assessor denied the Church's initial application for a tax exemption on the ground that the Church's use of the property, as stated in the application, violated the Town's zoning law. The Church's property is located in a section of the Town that is zoned as the "RU Rural District." Pursuant to the Town's zoning code:
"[The RU Rural District] is intended to allow the [T]own to grow while providing a reasonable measure of protection for agricultural activities and encouraging the preservation of open spaces and the rural character of the [T]own. It is designed to accommodate growth but under carefully controlled conditions protecting the public health and safety."
To that end, the zoning code lists eight "permitted uses" of property in the RU Rural District:
"(1) Agriculture, except intensive livestock operations[;] (2) Nurseries, commercial greenhouses, vineyards, orchards, wood lots and other horticultural and forestry enterprises[;] (3) Wildlife preserves and hunting and fishing camps[;] (4) Cemeteries[;] (5) Stables, commercial[;] (6) Single-family dwellings[;] (7) Government facilities[; and] (8) Fire, ambulance and essential services."
Further, the zoning code provides that any use not specifically permitted "shall be deemed to be specifically excluded." The zoning code separately lists 19 "conditional uses" of property in the RU Rural District, including "[s]ummer or day camps." A landowner may only engage in a conditional use of their property with the Town Planning Board's approval, upon a showing that the use "will comply with all conditions and standards for the location or operation of such use as may be reasonably imposed according to the requirements" of the zoning code. If "a proposed use is determined to be similar to one allowed as a conditional use, it shall be treated in a like manner."
The undisputed trial evidence established that during the relevant tax years, the Church held religious retreats on the property. The chairperson of the Church testified that the Church bought the property because it was looking for a place to, among other things, "have . . . retreat [and] prayer meetings." He testified that during the relevant tax years, a youth group visited the property twice for an overnight retreat, where they participated in "bible study, praying, [and] singing hymns." Additionally, an "elderly bible class group" stayed on the property twice in two years. Summarizing those events, the chairperson testified that the Church "ha[d] a couple of retreat[s] [that] occurred [the] last couple of years."
On cross examination, the chairperson made multiple admissions about previous sworn statements that he made regarding how the Church used the property, and which the court admitted into evidence. He admitted that, in his sworn application for the tax exemption in 2021, he affirmed, "we offer our church member[s] to be able to use [the property] for their retreat, prayer training, and ETC." In the same application, the chairperson stated that the Church's intended improvements of the property included "[two] adjacent buildings being used as a prayer house, chapel and church retreat center." The chairperson listed the Church's "use" of the property in the application as, among others, "Retreat Center for Church Members." He confirmed that the activities he listed in the application all involved "members of [his] congregation assembling in one place." Separately, the chairperson admitted that, in a sworn response to the Town's interrogatories during litigation, he described the "intended and actual use" of the property as "only for religious purposes—such as Bible study, prayer meeting, annual retreat and group meeting," and he affirmed that his description was "correct," both as to the "intended and actual use of the subject property." The chairperson also agreed that, in response to another interrogatory, he characterized an event that took place on the property in August 2021 as a "[y]oung adult retreat." Additionally, the court admitted into evidence a photograph of the property that depicted a sign identifying the property as the "Jubilee Retreat Center."
There is only one way to read this record. On multiple occasions, the Church violated the Town's zoning code by holding religious gatherings on the property, because such gatherings do not fall within any "permitted use" in the RU Rural District. Supreme Court therefore should have denied the Church's petitions, regardless of how the Church used the property on other occasions. The majority's analysis to reach the opposite conclusion is a house of cards, constructed by individually unpersuasive arguments that cause the whole structure to come collapsing down upon minimal scrutiny.
First, despite its protestations that I reweigh the evidence, the majority fabricates it. The majority describes the chairperson as testifying that the Church purchased the property with the intent of using it as a retreat center, but that "it ended up" using the property to farm vegetables (majority op at 3), suggesting that the Church reversed course and abandoned its initial intent. This is inaccurate. Although the chairperson testified about how the Church farmed on its property, he never described that farming as the Church's primary use of the property. Nor did the chairperson claim that the property was no longer a retreat center, even if the Church only used it for that purpose infrequently. Next, the majority states that the Town Supervisor and his family grew hay on the Church's property "without a formal agreement and without compensating the Church, or its predecessors" (id. at 3-4). It is not clear why the majority describes this arrangement, to which it makes no reference during its analysis of the relevant legal issues. To the extent that it is an effort to undermine the Town's case against the Church, it falls flat. The Town Supervisor testified that the Church was "[a]bsolutely" aware that he was growing hay on their property, and that "[t]hey've witnessed [him] there on a constant basis doing the ground, haying it." The Church also hired the Town Supervisor to till the land. The record provides no basis to believe that there was anything untoward in the Town Supervisor's use of the property. More generally, the majority's analysis of the Town Supervisor's and Town Assessor's testimony is irrelevant. The Church's own evidence proved that it violated the zoning code, satisfying the Town's burden. Whether the Town Supervisor or Town Assessor personally observed those violations is academic.
As to the majority's claim that the chairperson's "complete testimony supports the conclusion that the youth came to farm the property" (majority op at 8), the chairperson himself described the youth group as visiting the "retreat center" on the property. When the Church's attorney directly asked the chairperson "what went on while [the youth group] w[as] there," the chairperson responded, "bible study, praying, singing hymns. You know, those church activities," making no mention of farming. The only way to read the record as the majority does is to engage in impermissible factfinding, crediting some portions of the chairperson's testimony while wholly ignoring others.
Second, the majority asserts that "much" of the evidence I enumerate "is indicative of the Church's intent in purchasing the property, not its actual use" (majority op at 8). The majority misapprehends the law. The Court has held that "the actual or physical use" is relevant to the question of whether a landowner is exclusively using their property for exempt purposes under RPTL 420-a (see Matter of Lackawanna Community Dev. Corp. v Krakowski, 12 NY3d 578, 581 [2009]). However, evidence of how a landowner intended to use their property is relevant to interpreting how they actually used that property. The sign proclaiming the property as a retreat center, and the chairperson's repeated statements about how the Church intended to use the property as a retreat center, dispel any doubt that the events the Church held on its property, including the gatherings of young and elderly parishioners, were indeed retreats that violated the Town's zoning code. The majority cites no authority supporting that evidence of this kind is irrelevant to understanding how the Church actually used the property.
Third, the majority asserts that the Town did not show that the gatherings took place in the relevant tax years (majority op at 6). The chairperson's specific admission that the Church held a youth retreat on the property in August 2021 belies the majority's claim. Further, the only reasonable interpretation of the chairperson's repeated testimony that the Church held retreats during the "last couple of years," or "two times in two years," at a trial over the Church's use of the property over two tax years, is that those retreats spanned both years. Notably, the Church did not raise this argument in its post-trial brief, and neither Supreme Court nor the Appellate Division raised it.
Fourth, the majority states that there was no record evidence of the Church's definition of "retreat," or whether the retreats that the Church held on the property would fall within the zoning code's definition of a conditional use (see majority op at 7). This point flips the Town's zoning code on its head and is utterly unpersuasive. Regardless of how the Church would define a retreat, the record evidence included descriptions of the gatherings the Church held on the property. Those gatherings, as described, did not fall within any of the eight permitted uses in an RU Rural District, and there is no record evidence that the Church applied for approval to hold the gatherings as a conditional use. The analysis of the Town's zoning code ends there. The majority's reliance on this point epitomizes the fundamental flaw in its analysis: at no point does the majority identify how the Church's gatherings were a permitted use of property in an RU Rural District. Its multiple efforts to deflect from that flaw make it all the more glaring.
Finally, the majority papers over its reweighing of facts in the record by stating that "there is simply no basis to disturb Supreme Court's findings, affirmed by the Appellate Division, that the Town failed to discharge its burden to prove a zoning violation sufficient to defeat a tax exemption" (majority op at 8). Neither court made such a finding. Both Supreme Court and the Appellate Division appear to have reached their conclusions after erroneously limiting [*5]their analysis to whether the Church violated the zoning code by using the property primarily for "church" purposes. Indeed, the Appellate Division deemed any other argument that the Church was violating the zoning code as "unpreserved" (230 AD3d 885, 890 n 2 [3d Dept 2024]). However, in its post-trial briefing, the Town did not limit its argument in that manner. It argued that "the stated purpose of the property—as a center for retreats and group meetings—is not permitted under the Town [z]oning [c]ode. The use of the property by [the Church]—which includes overnight accommodation of groups of eight to 10 people—is impermissible under the Town [z]oning [c]ode for a property in an RU [Rural] District."[FN1] Thus, the lower courts only found that the Church was not using the property for "church" purposes, not that there were no retreats on the property. The majority's framing ignores the determinative question of whether the Town met its burden of proving that the Church's use of the property violated the zoning code.
As the uncontroverted trial evidence conclusively established that the Church used the property in violation of the applicable zoning laws, the record was devoid of any support for the trial court's conclusion to the contrary. I would therefore reverse the Appellate Division's order and dismiss the petitions. I dissent.
Order affirmed, with costs. Opinion by Chief Judge Wilson. Judges Garcia, Cannataro and Halligan concur. Judge Rivera dissents and votes to dismiss the petitions in an opinion, in which Judges Singas and Troutman concur.
Decided November 24, 2025

Footnotes

Footnote 1: The Church has a predominantly Korean congregation.
Footnote 2: The Church no longer owns the subject property.
Footnote 3: The dissent's assertion that evidence of intended use is probative to determining actual use (dissenting op at 6) is not supported by citation to legal authority and lacks a basis in our case law. Moreover, the dissent's desire to weigh the claimed probative value of intended use against the evidence about actual use demonstrates the impermissible reweighing of facts underlying its analysis.
Footnote 4: It is the Church's purported use of the property as a "retreat" that the Town complains of, not its use of the property for "religious gatherings" (dissenting op at 5), as described by the dissent.
Footnote 5: Contrary to the dissent's assertion, Supreme Court was entitled to rely on evidence that the Town Supervisor's residence across the street and regular use of the subject property for harvesting hay for his own benefit and tilling the land so the Church could grow vegetables was evidence that the Church's primary purpose was farming, not use as a religious retreat. Despite the Supervisor's frequent and unfettered presence on the property and residence across the street, he observed no uses in violation of the zoning code and only uses consistent with it, in which he actively participated.
Footnote 6: For this reason, the Appellate Division correctly held that the Town failed to raise "alternative zoning violations . . . at trial" that "in any case, lack support in the trial record" (230 AD3d at 890 n 2).

Footnote 1: The majority ignores the Town's clear preservation and articulation of this issue, and ignores Supreme Court's inexplicable failure to address it, by quoting different language from the Town's summary judgment motion, rather than its post-trial brief.