In the Matter of the SALVATION ARMY, Respondent, v TOWN OF ELLICOTT BOARD OF ASSESSMENT REVIEW et al., Appellants.

Fourth Department, April 12, 1984

**APPEARANCES OF COUNSEL**

*Walter M. Donovan* for appellants.

*John L. Sellstrom, P. C.*, for respondent.

**OPINION OF THE COURT**

SCHNEPP, J.

The Salvation Army, a religious and charitable organization organized in New York State pursuant to chapter 468 of the Laws of 1899 as amended by chapter 247 of the Laws of 1957, brought this proceeding under article 7 of the Real Property Tax Law for review of the assessment of certain real property owned by it in the Town of Ellicott.[1] The premises, used as a Salvation Army "thrift store", are open to the general public during normal business hours. A variety of donated items that have been "repaired, cleaned and put into workable condition" are sold at the store for a nominal price and the "net proceeds" are used by the Army

---

1. The deed conveying the premises to the Salvation Army and its tax exemption application list a New York City address.

for its rehabilitation center in Erie, Pennsylvania. At issue is whether the property is entitled to tax exemption under section 420-a of the Real Property Tax Law.[2]

Under that section, real property owned by a corporation organized and conducted exclusively for religious or charitable purposes is entitled to a tax exemption if the property is used exclusively for carrying out the exempt purposes of its owner provided that no officer or member of the owning corporation receives any pecuniary profit from the property's use. Here, there is no dispute that the Salvation Army, which owns the property, is organized and conducted exclusively for purposes which entitle it to a tax exemption and that no officer or member of the Army derives any pecuniary profit from the operation of the thrift store. The narrow issue is whether the property sought to be taxed is used exclusively in furtherance of the concededly exempt purposes for which the Army is organized. The term "exclusive" as it is used in this context has been interpreted to mean "principal" or "primary" (*Matter of Symphony Space v Tishelman,* 60 NY2d 33, 38). If the ostensible purposes for which the property is used, however, "are a guise or pretense for profit making" the property is not tax exempt (*Matter of Syracuse Univ. v City of Syracuse,* 92 AD2d 46, 51, mot for lv to app dsmd 59 NY2d 668). Thus, a tax exemption is warranted here if the use of property as a thrift store carries out the Army's primary exempt purposes and is not a guise for profit making.

It has been held that the special act incorporating the Salvation Army (L 1899, ch 468) was intended, among other things, to authorize it to engage in the sale of "books, dry goods and uniforms", and to exempt the Army from all taxation therewith (*People ex rel. Salvation Army v Feitner,* 33 Misc 712, 713, affd 68 App Div 639; see, also, 4 Opns of Counsel of St Bd of Equal & Assess No. 106, p 195). In 1980, it was also held that premises on which a Salvation Army thrift shop is located in Port Chester, New York, are exempt from real property taxation since the store is operated in furtherance of the Army's primary exempt purposes and provides "rehabilitation opportunities" and "work therapy" for "unfortunate homeless men" who assist

---

**2.** Formerly section 420 (renum by L 1981, ch 919).

with the shopkeeping and are involved in collecting, sorting and repairing the donated merchandise sold at the store (*Matter of Salvation Army v Commission of Assessment & Taxation of Vil. of Port Chester,* 110 Misc 2d 1036, 1040-1041, affd 79 AD2d 1117, mot for lv to app den 53 NY2d 609).

Special Term, acting upon the pleadings alone, viewed itself as "constrained" by the *Port Chester* decision and directed respondent town to grant a real property tax exemption to the property in question. We agree with this result, and for the reasons which follow affirm the order granting the exemption.

The town argues that for several reasons Special Term erred as a matter of law in holding that the property is used for one of the exempt purposes for which the Salvation Army was established. Its principal contention is that the Salvation Army thrift store here, like the thrift store in *Matter of Stuyvesant Sq. Thrift Shop v Tax Comm.* (54 NY2d 735), is operated as a commercial retail sales outlet open to the public solely to generate funding. According to the town, the thrift store operation does not fall within the permitted activities in which the Army is authorized to engage and is not an activity conducted exclusively to carry out the Army's religious and charitable purposes. Thus, the town argues that the premises on which the store is located are not tax exempt. Furthermore, the town while conceding that the essential facts[3] are the same here as in *Port Chester* (110 Misc 2d 1036, *supra*), argues that, in light of *Stuyvesant* (*supra*), *Port Chester* was wrongly decided.

We view the town's concession that the facts here are substantially the same as in *Port Chester* (*supra*) as critical because in *Port Chester* the importance of the thrift store as a rehabilitative tool utilized by the Army was established at a trial. Thus, the facts developed there must be closely examined in the context of this case.

It is apparent after examining *Port Chester* (*supra*) that the Army's thrift store operation generates funds which

---

**3.** According to the town, the only difference between this case and *Port Chester* (110 Misc 2d 1036) is that the net proceeds of the thrift store here are used to support an out-of-State Salvation Army center.

are used to finance the Army's exempt activities. Indeed, the net proceeds of the store here are used by the Army to finance one of its facilities in Erie, Pennsylvania. Perhaps, as the Army contends, the generation of income is authorized under its certificate of incorporation which permits the selling of "any of the articles, goods, and appliances required by the Salvation Army" (L 1899, ch 468, § 8). However, if the thrift stores are merely a profit-making venture to finance the Army's charitable purposes, then the argument of the town that these retail stores are indistinguishable from any other commercial enterprise selling general retail merchandise to the general public would have merit. But it is clear in light of *Port Chester* that the generation of funds is only one facet of the operation. The good to be derived from these thrift stores lies in the "work therapy" and "rehabilitation opportunities" which the stores provide (see *Matter of Salvation Army v Commission of Assessment & Taxation, supra,* pp 1040-1041). This is the primary purpose of the operation. The "unfortunate homeless men" who reside at Salvation Army centers operate the trucks which pick up the reusable and repairable articles that have been contributed by citizens of the community to the Army; they sort, process and repair the items to put them in maximum salable condition; and they assist with the shopkeeping at the stores which sell the items at a nominal price, i.e., a price small in comparison with actual value (*Matter of Salvation Army v Commission of Assessment & Taxation, supra,* pp 1039-1041). In short, Salvation Army thrift stores are an integral part of the rehabilitative work conducted by the Army and provide an outlet for merchandise which has been collected, repaired and cleaned by Salvation Army center residents who by these efforts are attempting to put meaning and accomplishment into their lives. The "profit-making" aspect of the enterprise and the income generated by the operation are only a small part of the purpose of the Salvation Army thrift stores, as their essential use and purpose is to provide meaningful work and areas of endeavor to those persons who seek the opportunity to become self-supporting assets to society.

Herein lies an essential difference between this case and *Matter of Stuyvesant Sq. Thrift Shop v Tax Comm.* (54 NY2d 735, *supra*) which is relied on by the town. Unlike the thrift store in *Stuyvesant,* Salvation Army thrift stores are not organized and operated for the sole purpose of generating income and making a profit.[4] These stores may not be equated to the operation on the premises of a gas station, grocery store or similar retail outlet. They are operated as an integral part of the program of rehabilitation and therapy under the religious and charitable purposes for which the Salvation Army was incorporated, and not solely as a profit-making enterprise. As such, their operation furthers the Army's exempt purposes (see, e.g., *Matter of St. Joseph's Health Center Props. v Srogi,* 51 NY2d 127, 131). They are an essential part of the Army's religious and charitable activities and purposes and would not exist if not for these objectives (cf. *Matter of Genesee Hosp. v Wagner,* 47 AD2d 37, affd on opn below 39 NY2d 863; *Matter of Syracuse Univ. v City of Syracuse,* 92 AD2d 46, *supra*). In our view then, the "profit-making" aspect of the Salvation Army thrift store operation is incidental to the main exempt purpose for which these stores are established and does not destroy entitlement to an exemption under section 420-a of the Real Property Tax Law (see *People ex rel. Watchtower Bible & Tract Soc. v Haring,* 8 NY2d 350; *Matter of Nassau County Council Boy Scouts of Amer. v Board of Assessors,* 84 AD2d 862).

We have considered the other arguments by the town on this appeal and find them to be without merit.

Accordingly, the judgment of Special Term granting the tax exemption should be affirmed.

HANCOCK, JR., J. P., DENMAN, BOOMER and O'DONNELL, JJ., concur.

Judgment unanimously affirmed, with costs.

---

4. In addition, we note that unlike *Stuyvesant* (54 NY2d 735), where the thrift store was owned by a separate and independent membership corporation with no independent corporate exempt purpose, the thrift store here is owned by a corporation whose religious and charitable purposes are unquestioned.