OPINION OF THE COURT
Pigott, J.
Petitioner Jamaica First Parking, LLC owns and operates five commercial parking facilities for the purpose of furthering the goal of its sole member — not-for-profit corporation Greater Jamaica Development Corporation — to revitalize downtown Jamaica, Queens. The issue on this appeal is whether respondent New York City Tax Commission improperly revoked Jamaica First’s real property tax exemption pursuant to Real Property Tax Law § 420-a (1) (a). We hold that because Jamaica First’s ownership and operation of the parking facilities is not incidental to a tax-exempt purpose, it is not entitled to a real property tax exemption under that statute.
L
Greater Jamaica was formed in 1967 to promote commerce and business growth in downtown Jamaica. It is exempt from federal income taxation pursuant to Internal Revenue Code (26 USC) § 501 (c) (3),[1] and, as Greater Jamaica’s certificate of incorporation states, it is “organized and . . . operated *620 exclusively for charitable, scientific and educational purposes within the meaning of [that section].” Such purposes include, among other things, the promotion and coordination of Jamaica’s business, commercial and retail districts; the encouragement of development of Jamaica’s commercial, industrial and manufacturing facilities; and the provision of support and assistance in the planning, development and expansion of Jamaica’s cultural, recreational, governmental and transportation facilities.
Consistent with those purposes, in 1996, Greater Jamaica purchased a parking garage from the City of New York through New York City’s Economic Development Corporation (EDC). Two years later, Greater Jamaica formed Jamaica First, a Delaware limited liability company, with Greater Jamaica constituting Jamaica First’s sole member. Jamaica First’s amended and restated limited liability company agreement states that Jamaica First was “formed for the purpose of acquiring, owning, developing and operating public parking facilities on a nonprofit basis, including financing the acquisition and development of three public parking facilities in Jamaica, New York, in furtherance of the charitable purposes of the Member.” Jamaica First’s certificate of formation provides that it “shall carry on any lawful purpose or activity not inconsistent with” Greater Jamaica’s tax-exempt status under Internal Revenue Code (26 USC) § 501 (c) (3).
In 2001, Jamaica First purchased three parking facilities from the City of New York through the EDC; said facilities had previously been operated by the New York City Department of Transportation. Greater Jamaica expended monies to renovate and upgrade the facilities. That same year, the Internal Revenue Service (IRS) issued Greater Jamaica a private letter ruling explaining that the separate legal existence of Jamaica First would be disregarded for federal income tax purposes, such that the acquisition, financing, renovation, operation and use of the parking facilities by Jamaica First would be treated for federal income tax purposes as the acquisition, financing, renovation, operation and use of the parking facilities by Greater Jamaica. Moreover, according to the letter ruling, Jamaica First’s operation of the parking facilities would be substantially related to Greater Jamaica’s charitable exempt *621 purposes under Internal Revenue Code (26 USC) § 501 (c) (3) and would lessen the burdens of government within the meaning of 26 CFR 1.501(c)(3)-1 (d) (2).
In 2004, Greater Jamaica conveyed the parking garage it purchased in 1996 to Jamaica First. Jamaica First thereafter purchased vacant land from the City and finished construction of a 410-car parking garage on that property in 2006. According to Greater Jamaica and Jamaica First, all five parking facilities provide below-market, reasonably-priced parking for local retail stores, state and federal office buildings and religious organizations.
In 2007, respondent New York City Department of Finance (DOF) granted real property tax exemptions for the five parking facilities pursuant to RPTL 420-a (1) (a). Four years later, the DOF revoked the exemptions, stating that the properties’ uses as parking facilities did not fall into any of the enumerated uses of section 420-a and asserting that the status that the IRS bestowed upon Greater Jamaica was “not determinative of the issue of charitable use of the property as defined by 420-a.” The DOF determined that the use of the parking facilities, even for economic development of an underdeveloped area, did not constitute a “charitable” use, and that the parking facilities were “not incidental to another recognized charitable purpose but [were] the very purpose for which the property [was] being used.” According to the DOF, although the parking facilities served an important public purpose like community development, that purpose by itself did not qualify the properties for a charitable exemption under section 420-a.
IL
Greater Jamaica and Jamaica First (collectively, petitioners) commenced this hybrid proceeding pursuant to RPTL article 7 and CPLR article 78 against the DOF and the New York City Tax Commission (collectively, City) requesting a judgment declaring that the City’s decision to revoke the exemptions was arbitrary and capricious and contrary to law and that Jamaica First was entitled to the exemptions. Petitioners also sought a judgment directing the City to grant the tax exemptions.[2] The City cross-moved for an order dismissing that part of the *622 petition seeking relief pursuant to CPLR article 78, relying on its 2011 revocation letter along with the statements in the amended verified petition and Jamaica First’s amended limited liability agreement that Jamaica First was “formed for the purpose of acquiring, owning, developing and operating public parking facilities on a nonprofit basis” as part of Greater Jamaica’s charitable purpose of promoting commerce and business growth in Jamaica. The City argued that the parking facilities were not entitled to a section 420-a exemption because they were neither owned nor operated exclusively for a charitable purpose. Supreme Court upheld the City’s revocation of the tax exemption and granted its cross motion to dismiss the petition.
The Appellate Division reversed the order and judgment insofar as appealed from by petitioners, granted the parking facilities the tax exemption, annulled the City’s determination and denied the City’s cross motion (111 AD3d 937, 937 [2d Dept 2013]). It held that the City failed to meet its burden of establishing “revocation of the tax exemption on the grounds that the petitioners’ activity did not conform to a charitable purpose within the meaning of RPTL 420-a” (id. at 939). The Court explained that
“[a]bsent a precise statutory definition of ‘charitable purpose,’ courts have interpreted this category to include relief of poverty, advancement of governmental and municipal purposes, and other objectives that are beneficial to the community. Furthermore, a property owner seeking a real property tax exemption which demonstrates that it is a not-for-profit entity whose tax-exempt status has been recognized by the [IRS] and whose property is used solely for charitable purposes has made a presumptive showing of entitlement to exemption” (id. [some internal quotation marks, brackets and citations omitted]).
The Appellate Division pointed to petitioners’ submission of the IRS’s letter ruling recognizing them as charitable organizations, and also to Greater Jamaica’s certificate of incorporation — which stated that Greater Jamaica was to be operated for charitable purposes — as proof that it was operated for a charitable purpose (see id.). As to Jamaica First, the Court observed that Jamaica First’s certificate of formation explained that it was created to carry out Greater Jamaica’s “charitable *623 purposes by acquiring and operating public parking facilities on a nonprofit basis,” such that both organizations had established that they were formed for a charitable purpose pursuant to RPTL 420-a {id. at 939-940). Finally, according to the Appellate Division, “petitioners demonstrated that the use of their public parking facilities was consistent with their exempt purpose, as expressly noted by the IRS in granting such operation tax exempt status,” because their “charitable purpose was to improve Jamaica’s business district through further economic development, [and] offering convenient and inexpensive public parking to attract visitors and businesses was central to their aim” {id. at 940).
We granted the City leave to appeal (23 NY3d 908 [2014]) and now reverse.
IIL
RPTL 420-a (1) (a) provides that real property owned by a corporation or association that is “organized or conducted exclusively for . . . charitable . . . purposes,” if used “exclusively” for such purposes, will be exempt from taxation. We have held that “[t]he term ‘exclusively’, in this context, has been broadly defined to connote ‘principal’ or ‘primary’ such that purposes and uses merely ‘auxiliary or incidental to the main and exempt purpose and use will not defeat the exemption’ ” (Matter of Yeshivath Shearith Hapletah v Assessor of Town of Fallsburg, 79 NY2d 244, 249 [1992], quoting Matter of Association of Bar of City of N.Y. v Lewisohn, 34 NY2d 143, 153 [1974]). Thus, whether property is used “exclusively” for purposes of section 420-a is dependent upon whether the “primary use” of the property is in furtherance of permitted purposes (Matter of Yeshivath Shearith Hapletah, 79 NY2d at 250).
Here, the City revoked the parking facilities’ section 420-a tax exemption after having previously allowed the exemption in 2007. Although the burden of proof generally lies with the party seeking the exemption, in a situation like this, where the taxing authority seeks to revoke that exemption previously granted, it is the taxing authority that has the burden of establishing that the property is not exempt from taxation (see Matter of Lackawanna Community Dev. Corp. v Krakowski, 12 NY3d 578, 581 [2009], citing Matter of New York Botanical Garden v Assessors of Town of Washington, 55 NY2d 328, 334 [1982]). In order to meet that burden, the City was required to *624 demonstrate either that petitioners were not “organized or conducted exclusively for” exempt purposes or that the parking facilities were not “used exclusively for carrying out thereupon one or more” exempt purposes (RPTL 420-a [1] [a]; see Congregation Rabbinical Coll. of Tartikov, Inc. v Town of Ramapo, 17 NY3d 763, 764 [2011] [holding that municipality failed to establish that the primary use of the property was not in furtherance of a tax-exempt purpose]).
The City revoked the tax exemption on the ground that it was erroneously awarded in the first instance. It met its burden in this regard by demonstrating that the “use” of the parking facilities was not for “charitable” purposes but rather for economic development, and that the use of the parking facilities was not “incidental to another recognized charitable purpose.” Specifically, the City’s revocation letter explained that the City reached its determination after reviewing documents submitted to it by Greater Jamaica and case law from this Court. The City also explained why it believed that the status granted Greater Jamaica by the IRS had no bearing on the issue of “charitable use” of the parking facilities under section 420-a. The letter stated that although the parking facilities may have served “an important public purpose and support [ed] development of a community,” those factors did not qualify the facilities for a charitable exemption. Indeed, according to the City’s review of the ownership structure of the lots along with other documentation, it appeared that Jamaica First collected monies that exceeded the carrying, maintenance and depreciation charges attributable to the premises and that Jamaica First utilized those excess proceeds to fund other additional operations, such as the purchase of an additional parking lot.
The City submitted additional proof in the form of an affirmation by the City’s Assistant Corporation Counsel, which pointed out that the factual allegations in the petition established that the facilities were not entitled to the exemption because Jamaica First was established for the sole purposes of acquiring, owning, developing and operating public parking facilities to promote Greater Jamaica’s primary purpose of promoting commerce and business growth in Jamaica. Thus, the grounds in the City’s revocation letter, which were plainly sufficient on their own but nonetheless elucidated by the affirmation of the City’s Assistant Corporation Counsel detailing how the allegations in the petition established that the parking facilities were not being operated *625 for a charitable purpose, were sufficient to meet the City’s initial burden of establishing that petitioners were not entitled to the tax exemption, i.e., that the use of the property was not in furtherance of a tax-exempt purpose, thereby shifting the burden to petitioners to establish their entitlement to an exemption. We hold that petitioners did not meet their burden in that regard.
IV
Although our inquiry as to whether petitioners established that the parking facilities are entitled to a tax exemption would ordinarily begin with an analysis of whether petitioners were “organized or conducted exclusively for” a tax-exempt purpose (RPTL 420-a [1] [a]), we assume for purposes of this appeal that they were.[3] However, we must nonetheless clarify that the Appellate Division erred to the extent that it held that petitioners made a presumptive showing of their entitlement to a real property tax exemption under section 420-a by establishing that their tax-exempt status as a “charitable organization” had been recognized by the IRS (111 AD3d at 939, citing Matter of Plattsburgh Airbase Redevelopment Corp. v Rosenbaum, 101 AD3d 21, 23 [3d Dept 2012], quoting Yeshiva Beth Yehuda V’Chaim D’Betlan v Town of Shandaken, 100 AD2d 641, 642 [3d Dept 1984]). Yeshiva Beth involved an attempt by a school district to vacate a default judgment against it that had been obtained by a religious corporation (100 AD2d at 642). The Court held that the school district was unable to refute the religious corporation’s “presumptive showing” of entitlement to an exemption through its averment that it was a religious corporation whose tax-exempt status had been recognized by the IRS and that the property was used for a religious purpose (id.).
In Yeshiva Beth, not only was the procedural posture different from the one presented here, it also involved a religious organization. Such organizations are recognized by both Internal Revenue Code (26 USC) § 501 (c) (3) and RPTL 420-a (1) (a). *626 Indeed, a closer look at both provisions indicates that there is some overlap between the two in the criteria that the relevant taxing authorities will consider in determining whether a corporation is either exempt from federal income taxation under Internal Revenue Code (26 USC) § 501 (c) (3) or entitled to an exemption under RPTL 420-a (1) (a) (see Internal Revenue Code [26 USC] § 501 [c] [3] [organizations that are “organized and operated exclusively for religious, charitable, scientific ... or educational purposes” entitled to federal income tax exemption]; RPTL 420-a [1] [a] [real property entitled to tax exemption if “owned by a corporation or association organized or conducted exclusively for religious (or) charitable . . . purposes”]). However, there are significant distinctions between the two provisions that prohibit the application of the type of presumption that the Appellate Division utilized in this case.
First, as already noted, Internal Revenue Code (26 USC) § 501 (c) (3) exempts certain organizations from federal income taxation. Section 420-a exempts certain organizations from real property taxation. Our local governments derive significant revenue from the imposition of real property taxes, and federal income taxation standards cannot be utilized to create a presumption in favor of a property owner seeking an exemption from a state real property tax.
Second, Internal Revenue Code (26 USC) § 501 (c) (3) and section 420-a utilize different tests in determining whether a given organization is entitled to a tax exemption under the relevant statute. Internal Revenue Code (26 USC) § 501 (c) (3) utilizes a two-pronged “organizational” and “operational” test, meaning that the organization must be “organized exclusively for one or more exempt purposes” delineated in that section (26 CFR 1.501[c][3]-l [b] [1] [i]) and it must be “operated exclusively for one or more exempt purposes” (26 CFR 1.501[c][3]-l [c] [1]). This requires an analysis of the organization and its operation as a whole. In contrast, section 420-a (1) (a) considers whether the real property is owned by a corporation or organization that is “organized or conducted exclusively” for one of the exempt purposes and whether the property is “used exclusively for carrying out thereupon one or more of such purposes” (emphasis supplied), meaning that the critical analysis for real property tax exemption purposes requires an analysis of the ownership and use of the property by the organization seeking the exemption.
*627 And, finally, the Internal Revenue Code contains a broad definition of what constitutes a “charitable” purpose. Specifically, the term “charitable” as used by Internal Revenue Code (26 USC) § 501 (c) (3) is defined as
“[r]elief of the poor and distressed or of the underprivileged; advancement of religion; advancement of education or science; erection or maintenance of public buildings, monuments, or works; lessening of the burdens of [g]overnment; and promotion of social welfare by organizations designed to accomplish any of the above purposes, or (i) to lessen neighborhood tensions; (ii) to eliminate prejudice and discrimination; (iii) to defend human and civil rights secured by law; or (iv) to combat community deterioration and juvenile delinquency” (26 CFR 1.501[c][3]-l [d] [2]).
In contrast, section 420-a does not contain a definition of what constitutes a “charitable” purpose, although, if the legislature intended for such an expansive definition of charitable purpose to apply, it could have easily referenced the Internal Revenue Code’s definition in section 420-a or adopted it outright.
 That being said, although an entity’s section 501 (c) (3) status does not entitle it to a presumption that it is “organized or conducted exclusively for” a tax-exempt purpose under RPTL 420-a (1) (a), that does not mean that courts considering an owner’s entitlement to an exemption under that statute are prohibited from considering the entity’s section 501 (c) (3) status as part of their overall analysis. Rather, we hold that evidence of an organization’s section 501 (c) (3) status, by itself, does not create a presumption that the entity is entitled to a tax exemption under section 420-a. This is evident from our prior holdings, where we have specifically stated that, for purposes of determining a real property tax exemption, a “favorable determination [ ] from the United States Department of the Treasury as to [an entity’s] exempt status for other tax purposes” is not dispositive (see Matter of Swedenborg Found, v Lewisohn, 40 NY2d 87, 95 [1976] [holding that nonprofit corporation that distributed writings of theologian that were sold at or below cost or distributed at no cost was not entitled to real property tax exemption because its purpose was neither primarily religious nor charitable]; Matter of Association of Bar of City of N.Y., 34 NY2d at 154 [finding unpersuasive decisions acknowledging the “charitable” character of *628 bar associations]). Therefore, to the extent lower court cases have held that such a presumption exists (see e.g. Oorah, Inc. v Town of Jefferson, 119 AD3d 1179, 1181 [3d Dept 2014]; Matter of Plattsburgh Airbase Redevelopment Corp., 101 AD3d at 23), they should no longer be followed for that proposition.
Although we do not disturb the Appellate Division’s holding that petitioners met the “organized or conducted exclusively for . . . charitable . . . purposes” prong of the tax exemption test, we part company with the Appellate Division relative to its holding that “petitioners demonstrated that the use of their public parking facilities was consistent with their exempt purpose, as expressly noted by the IRS in granting such operation tax exempt status” (111 AD3d at 940 [emphasis supplied]). By so holding, the Appellate Division utilized the petitioners’ organizational status under Internal Revenue Code (26 USC) § 501 (c) (3) to support its holding that petitioners demonstrated that the use of the parking facilities was for an exempt purpose. This was error.
As explained above, the IRS’s definition of what constitutes an exempt “charitable” purpose is exceedingly broad, including, among other things, “[the] lessening of the burdens of [g]overnment” (26 CFR 1.501[c][3]-l [d] [2]), while the second prong of section 420-a (1) (a) requires a court to review “the actual or physical use of the property . . . when it exempts from taxation property ‘used exclusively for carrying out thereupon one or more’ exempt purposes” (Matter of Lackawanna Community Dev. Corp., 12 NY3d at 581 [emphasis omitted], quoting RPTL 420-a [1] [a]). Thus, our analysis under section 420-a is concerned with the “use” of the parking facilities as a whole, and whether the facilities are “used exclusively for carrying out thereupon one or more of [section 420-a’s] purposes.”
Petitioners argue that the facilities provide “below-market, reasonably-priced parking” for residents, workers and visitors to downtown Jamaica’s retail stores and government offices. They claim that the revocation of tax-exempt status will result in the loss of business and visitors to malls and shopping areas with more affordable (or free) parking. While Greater Jamaica’s overall goal to create and maintain a viable downtown Jamaica is commendable, as are the means in facilitating that goal, i.e., through the operation of parking facilities that enable visitors to frequent local businesses, that does not mean that the facilitation of parking for such purposes constitutes a charitable use of the property under section 420-a (1) (a).
*629 We disagree with petitioners’ assertion that the parking facilities are charitable in and of themselves because they fulfill the primary purpose of economic development. The economic benefit conveyed by below-market rate parking, however, inures to the benefit of private enterprise and cannot be said to further any charitable purpose. It lessens the burden of local businesses, obviating any need for them to make their own parking arrangements for prospective customers. The below-market rates that the facilities charge provide an incentive for the public to patronize those businesses, providing a dual benefit for local businesses and a benefit to prospective customers of those businesses. While these goals may be laudable, they are not charitable.
The petitioners further claim that the parking facilities lessen the burden on local government, which, incidentally, is deemed a “charitable” purpose under the Internal Revenue Code (see 26 CFR 1.501[c][3]-l [d] [2]). They claim that the creation of the parking facilities relieved Jamaica of the burden of operating public parking lots. Essentially, petitioners’ argument is that the parking facilities provide a public benefit. But, as we have held on more than one occasion, “public benefit is not the test of qualification for exemption” (Matter of Association of Bar of City of N.Y., 34 NY2d at 154-155; see Matter of Swedenborg Found., 40 NY2d at 95).
To be sure, we have observed that “[f]or property to be entitled to an exemption on the ground that it is being used for a charitable purpose, it must a fortiori be used for a public purpose,” explaining, for example, that “one may not establish a trust solely for the benefit of oneself and one’s family, and then obtain a tax exemption for property owned by such a trust by claiming that it is a charitable organization” (Matter of North Manursing Wildlife Sanctuary [City of Rye], 48 NY2d 135, 140 [1979] [emphasis supplied]). We explained in Matter of North Manursing that exemptions are provided for those charitable uses that benefit the public and “not for so-called ‘charities’ which benefit only their creators” (id.). Our utilization of the term “public purpose” and indirect reference to “public benefit” acknowledges that while consideration of the benefit bestowed upon the public is but one factor that the courts may consider in determining whether the property is “used exclusively” for one of the enumerated tax-exempt purposes, it is the “used exclusively” test, and not the alleged “public benefit” test, that is the relevant inquiry. The parking facilities may *630 very well provide a “public benefit,” but the overall use to which these facilities are put, i.e., to further economic development and lessen the burdens of government, cannot be deemed “charitable” within the meaning of section 420-a (1) (a).
Nor can it be said that the operation of the parking facilities is “incidental” to a charitable purpose in the vein of similar uses that we, and other courts, have upheld as tax-exempt (see Matter of Merry-Go-Round Playhouse, Inc. v Assessor of City of Auburn, 24 NY3d 362, 368 [2014] [use of apartment buildings to provide housing for summer stock actors was incidental to theater organization’s primary purpose of encouraging art appreciation through theater]; Matter of Adult Home at Erie Sta., Inc. v Assessor & Bd. of Assessment Review of City of Middle-town, 10 NY3d 205, 216 [2008] [use of residences by participants in a community reentry program was incidental to the property owner’s “charitable purpose” of combating homelessness and drug abuse among low-income people]; Matter of St. Luke’s Hosp. v Boyland, 12 NY2d 135, 143 [1962] [partial tax exemption granted to portions of 10 apartment buildings owned by hospital because use of the apartments, which were occupied by its staff and their families, was “reasonably incident” to the hospital’s primary purpose]; see also Matter of Vassar Bros. Hosp. v City of Poughkeepsie, 97 AD3d 756, 759 [2d Dept 2012] [parking garage parcel only partially exempt where a substantial portion of said garage was “allocated for a use not reasonably incidental to the purpose of the hospital,” i.e., a medical office adjacent to the garage]; Matter of St. Francis Hosp. v Taber, 76 AD3d 635, 640 [2d Dept 2010] [partial exemption granted for parking garage adjacent to nonprofit hospital that was utilized by hospital’s visitors, patients and staff, since such use was “necessarily incidental” to the hospital’s exempt purpose]; Matter of Ellis Hosp. v Assessor of City of Schenectady, 288 AD2d 581, 583 [3d Dept 2001]).
In Vassar Bros., St. Francis Hosp. and Ellis Hosp., the courts held that the nonprofit hospitals’ parking spaces that were set aside for employees and patients of private medical clinics were not entitled to a tax exemption because such uses were not “incidental” to the nonprofit hospitals’ primary purposes. The same can be said for the uses of parking facilities in this instance. They are commercial lots that exist to promote economic development in downtown Jamaica, providing easy access to local retail stores and government buildings. While there may be a tenuous connection between the monies raised *631 from the parking facilities and other charitable purposes engaged in by Greater Jamaica — indeed, petitioners acknowledge that Jamaica First “has contributed excess revenues to assist [Greater Jamaica] in meeting its operating expenses”— the uses of these facilities are not incidental to Greater Jamaica’s charitable purposes.
Petitioners acknowledge that any monies in excess of the operating costs of the parking lots are utilized by Greater Jamaica in furtherance of charitable uses. But that does not detract from the fact that the parking lots’ primary use is to generate profits for distribution to Greater Jamaica[4] (see e.g. Matter of Stuyvesant Sq. Thrift Shop v Tax Commn. of City of N.Y., 76 AD2d 461, 464-465 [1st Dept 1980], affd for reasons stated below 54 NY2d 735, 737 [1981] [“The fact that the net cash profits are ultimately distributed to various institutions organized for charitable purposes does not in and of itself directly involve the (thrift store) in the charitable activities of the distributee organization . . . within the meaning of” the Real Property Tax Law exemption statute]; cf. Matter of Salvation Army v Town of Ellicott Bd. of Assessment Review, 100 AD2d 361, 364-365 [4th Dept 1984] [thrift store provided “meaningful work and areas of endeavor” to persons seeking to “become self-supporting assets to society” and the profit-making aspect of the store was “only a small part of the purpose of the Salvation Army thrift stores”]). Inasmuch as the parking facilities themselves are not incidental to a charitable purpose, they are not entitled to a section 420-a (1) (a) tax exemption.
Accordingly, the order of the Appellate Division should be reversed, with costs, and the matter remitted to that Court for consideration of issues that were raised but not determined on the appeal to that Court.

. As relevant here, the following organizations are exempt from federal income taxation under this provision: “Corporations, and any community chest, fund, or foundation, organized and operated exclusively for religious, *620 charitable, scientific, testing for public safety, literary, or educational purposes” (emphasis supplied).

. Petitioners further sought a judgment pursuant to article 7 of the RPTL challenging the amount of the assessments, but that challenge is not at issue on this appeal.

. Indeed, there is evidence in the record that both petitioners met this standard. Affixed to the petition are Greater Jamaica’s certificate of incorporation, which provides that it is a not-for-profit entity that was operated for, among other things, charitable purposes, and Jamaica First’s certificate of formation, which states that it was created to assist in the charitable purposes of its member, Greater Jamaica. Greater Jamaica’s president submitted an affidavit detailing certain of the works engaged in by Greater Jamaica that could arguably be considered “charitable.”

. Our determination in this regard is premised not on the fact that the parking facilities themselves may be profitable, but is instead premised on how the parking facilities are utilized (see Matter of Adult Home, 10 NY3d at 216). And, as we have noted in other instances, “[a] ‘commercial patina’ alone is not enough to defeat tax-exempt status” (Matter of Symphony Space v Tishelman, 60 NY2d 33, 38-39 [1983]; see Matter of Merry-Go-Round Playhouse, Inc., 24 NY3d at 367).