Matter of Catskill Watershed Corp. v Assessor of the Town of Middletown (2023 NY Slip Op 03055)

Matter of Catskill Watershed Corp. v Assessor of the Town of Middletown

2023 NY Slip Op 03055

Decided on June 8, 2023

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:June 8, 2023

535070
[*1]In the Matter of Catskill Watershed Corporation, Respondent,
v
Assessor of the Town of Middletown et al., Appellants.

Calendar Date:April 27, 2023

Before:Garry, P.J., Aarons, Pritzker, Ceresia and Fisher, JJ.

E. Stewart Jones Hacker Murphy LLP, Troy (Patrick L. Seely Jr. of counsel), for appellants.
Whiteman Osterman & Hanna LLP, Albany (Christopher M. McDonald of counsel), for respondent.

Fisher, J.
Appeal from a judgment of the Supreme Court (Brian D. Burns, J.), entered March 8, 2022 in Delaware County, which granted petitioner's application, in a combined proceeding pursuant to CPLR article 78 and action for declaratory judgment, to, among other things, annul a determination of respondents Assessor of the Town of Middletown and Board of Assessment Review of the Town of Middletown revoking petitioner's real property tax exemption.
Petitioner is a local development corporation organized for several charitable and public purposes, predominantly including the protection of water quality in the portion of New York City's drinking water supply located in the West of the Hudson Watershed (hereinafter the Watershed). Such drinking water supply is derived from surface water subject to the requirements created by the Federal Clean Water Act (33 USC § 1251 et seq.) and the Surface Water Treatment Rules (40 CFR 141.70 et seq.), which obligated the City to either filter the surface water before distribution or apply for a waiver through a filtration avoidance determination (hereinafter FAD) to avoid building a multi-billion dollar filtration plant. Following litigation in the 1990s, settlement negotiations were reduced to a memorandum of understanding between the upstate communities in the Watershed and City, state and federal officials (hereinafter the MOU), wherein the City was able to avoid filtering the surface water supply by adhering to certain criteria and complying with prescribed requirements contained in an extensive watershed management program.
Petitioner was created as part of the process to administer the watershed management program that the City was required to maintain under the FAD, which included various watershed control projects and initiatives to protect the surface water from contamination pursuant to the MOU. Such programs include those related to stormwater control, flood hazard mitigation, community wastewater management, septic management, public education and tax litigation avoidance. Petitioner and these various watershed projects used to benefit the upstate communities within the Watershed are primarily funded by the City and partly overseen by the New York City Department of Environmental Protection (hereinafter DEP), the agency responsible for managing the drinking water supply for the City. Petitioner is recognized as a tax-exempt charitable entity under federal law (see Internal Revenue Code [26 USC] § 501 [c] [3]).
In 2020, petitioner relocated its headquarters to a property that it purchased and improved in the Town of Middletown, Delaware County. Such property consists of petitioner's headquarters, an office suite leased to DEP and an area leased to the Catskill Discovery Center that functions as an educational center and museum. Prior to petitioner's relocation, respondent Assessor of the Town of Middletown (hereinafter the tax assessor) deemed petitioner's property to be wholly exempt from taxation as it was [*2]being used for charitable purposes under RPTL 420-a (1) (a). When petitioner applied to renew its tax-exempt status for 2020, the tax assessor partially renewed the exemption, but revoked the part of the exemption as it related to the area leased by DEP. After petitioner's appeal to respondent Board of Assessment Review of the Town of Middletown (hereinafter the BAR) was denied, petitioner commenced a combined CPLR article 78 proceeding and declaratory judgment action against respondents. Supreme Court (Northrup Jr., J.) reversed the decision in part, finding that petitioner was entitled to a 21% exemption from the taxes on the part of the property leased by DEP based on the number of DEP employees who were directly working to support petitioner's tax-exempt activities. Neither party appealed such order.
While the 2020 assessment litigation was ongoing, petitioner applied to renew its tax-exempt status for 2021. The tax assessor denied this application in full, which was affirmed by the BAR. Petitioner commenced this combined CPLR article 78 and RPTL article 7 proceeding, seeking, among other things, to annul the denial of the exemption and a declaration that the property was entitled to the full exemption. Supreme Court (Burns, J.) granted petitioner's application, finding that petitioner's use of the property was for charitable purposes. Respondents appeal.
Real property tax exemptions for nonprofit organizations are governed by RPTL 420-a, which provides that "[r]eal property owned by a corporation or association organized or conducted exclusively for . . . charitable . . . purposes, and used exclusively for [such purposes] . . . shall be exempt from taxation" (RPTL 420-a [1] [a]). "To qualify for the exemption, (1) [the] petitioner must be organized exclusively for the purposes enumerated in the statute, (2) the property in question must be used primarily for the furtherance of such purposes, (3) no pecuniary profit, apart from reasonable compensation, may inure to the benefit of any officers, members, or employees, and (4) [the] petitioner may not be simply used as a guise for profit-making operations" (Matter of Maetreum of Cybele, Magna Mater, Inc. v McCoy, 111 AD3d 1098, 1100 [3d Dept 2013] [internal quotation marks, brackets, ellipsis and citations omitted], affd 24 NY3d 1023 [2014]; see also Mohonk Trust v Board of Assessors of Town of Gardiner, 47 NY2d 476, 483 [1979]).A municipality seeking to revoke an exemption bears the burden of proving that the real property in question has become subject to taxation (see Matter of Pine Harbour, Inc. v Dowling, 89 AD3d 1192, 1193 [3d Dept 2011]; see also Matter of Lackawanna Community Dev. Corp. v Krakowski, 12 NY3d 578, 581 [2009]) or, alternatively, that "the tax exemption was erroneously awarded in the first instance" (Matter of Lake Forest Senior Living Community, Inc. v Assessor of the City of Plattsburgh, 72 AD3d 1302, 1304 [3d Dept 2010] [internal quotation marks and citation omitted]).[*3]
Under RPTL 420-a (1) (a), the term "exclusively" has been interpreted to mean the "principal" or "primary" purpose (Matter of Greater Jamaica Dev. Corp. v New York City Tax Commn., 25 NY3d 614, 623 [2015] [internal quotation marks and citations omitted]; see Matter of International Student Exch., Inc. v Assessors Off. of the Town of Islip, 185 AD3d 815, 817 [2d Dept 2020]; Matter of St. William's Church of Troy, N.Y. v Dimitriadis, 115 AD3d 1031, 1032 [3d Dept 2014]).Although what constitutes a charitable purpose is not defined by the RPTL, it has been interpreted to include "promotion of health, governmental and municipal purposes" (Matter of Farm Sanctuary v Patton, 221 AD2d 67, 68 [3d Dept 1996]), and for environmental protection (see Matter of Adirondack Land Trust v Town of Putnam Assessor, 203 AD2d 861, 862 [3d Dept 1994], lv denied 84 NY2d 809 [1994]; see also Mohonk Trust v Board of Assessors of Town of Gardiner, 47 NY2d at 484; Matter of Scenic Hudson Land Trust v Sarvis, 234 AD2d 301, 303 [2d Dept 1996]). However, even where a property is "entitled to an exemption on the ground that it is being used for a charitable purpose, it must a fortiori be used for a public purpose," and cannot be used to "benefit only [the charitable organization's] creators" (Matter of North Manursing Wildlife Sanctuary [City of Rye], 48 NY2d 135, 140 [1979]; see Matter of Greater Jamaica Dev. Corp. v New York City Tax Commn., 25 NY3d at 629). To that end, "while consideration of the benefit bestowed upon the public is but one factor that the courts may consider in determining whether the property is 'used exclusively' for one of the enumerated tax-exempt purposes, it is the 'used exclusively' test, and not the alleged 'public benefit' test, that is the relevant inquiry" (Matter of Greater Jamaica Dev. Corp. v New York City Tax Commn., 25 NY3d at 667-668; see Matter of Lackawanna Community Dev. Corp. v Krakowski, 12 NY3d at 581).
Here, respondents contend that, although the watershed management programs may provide a public benefit, the overall use of the property is not for a charitable purpose because it is used for managing programs with the sole goal of avoiding an estimated $10 billion capital cost and $100 million annual operating cost of a water filtration plant for the City. We agree. The service agreement between petitioner and the City provided that petitioner was to continue to satisfy the City's obligations under the MOU and FAD as an independent contractor for the City. In doing so, the vast majority of petitioner's funding for the various watersheld management programs was supplied by the City, which would in turn charge "rate payers" for water. Although the upstate communities in the Watershed benefitted from such funding, the City also enjoyed the benefits from the enhanced quality of the water that ulitimately would be sold to its customers while avoiding the costs of a filtration plant. According to petitioner's former executive director, [*4]the City funded these watershed management programs not "out of the goodness of their heart," but for the City to comply with its obligations created by the FAD.
Notably, petitioner's certificate of incorporation expressly provides that it is formed for, among other things, "the exclusively charitable or public purposes of . . . aiding that part of the . . . [community in the Watershed] by attracting new commerce and industry to such area and by encouraging the development of, or retention of, commerce and industry in such area, and lessening the burdens of government and acting in the public interest." These near-identical reasons were rejected by the Court of Appeals, which acknowledged that, even though a property may very well provide a laudable "public benefit," where the overall use is "to further economic development and lessen the burdens of government, [such use] cannot be deemed 'charitable' within the meaning of section 420-a (1) (a)" (Matter of Greater Jamaica Dev. Corp. v New York City Tax Commn., 25 NY3d at 630). Nor do we find convincing petitioner's federal tax-exempt status, as "evidence of an organization's section 501 (c) (3) status, by itself, does not create a presumption that the entity is entitled to a tax exemption under [RPTL 420-a]" — particularly given that the "IRS's definition of what constitutes an exempt 'charitable purpose' is exceedingly broad" (id. at 627-628).
Based on the foregoing, we find that Supreme Court erred in determining that petitioner's activities on the property were charitable uses entitling it to an exemption from real property taxes pursuant to RPTL 420-a (1) (a). Inasmuch as the record reflects that Supreme Court was engaged in discovery relating to the valuation of petitioner's property, and the parties confirm that a trial is scheduled on that issue, we remit the matter for further consideration not inconsistent with our decision. We have examined the parties' remaining contentions, and have found them to be rendered academic or without merit.
Garry, P.J., Aarons, Pritzker and Ceresia, JJ., concur.
ORDERED that the judgment is reversed, on the law, without costs, and matter remitted to the Supreme Court for further proceedings not inconsistent with this Court's decision.